UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRUCE WRIGHT, JORGE VALDES and
EDWIN DIAZ,

    Plaintiffs,

v.

Case No: 6:18-cv-1851-Orl-40TBS

EXP REALTY, LLC,

    Defendant.

## ORDER

This cause comes on for consideration of eXP Realty, LLC's Motion to Stay Proceedings (Doc. 45) in this putative class action brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). Defendant seeks a stay for an unspecified period of time to await further guidance from the Federal Communications Commission ("FCC") regarding the definition of an automatic telephone dialing system ("ATDS"). The motion is opposed by Plaintiffs (Doc. 49).

### Background

Plaintiffs Bruce Wright, Jorges Valdes, and Edwin Diaz ("Plaintiffs") claim that Defendant, eXp Realty violated the TCPA by making unsolicited telephone calls with an ATDS or prerecorded voice and by calling phone numbers registered on the National Do Not Call Registry (the "DNC Registry") (Doc. 30). Plaintiffs allege they had no relationship with eXp Realty, and each received unwanted calls from eXp Realty agents (Id. at ¶¶ 4-6, 29, 33, 39). Plaintiffs seek to certify the following nationwide classes:

> **Prerecorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called (2) using a

> prerecorded voice message, and (3) for whom Defendant (a) claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff Diaz, or (b) does not claim it obtained prior express written consent.
>
> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using a dialer substantially similar to the dialer used to call Plaintiffs, and (4) for whom Defendant (a) claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiffs, or (b) does not claim it obtained prior express written consent.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called/texted more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the DNC for at least thirty days, (4) for substantially the same reason Defendant called Plaintiffs Valdes and Diaz, and (5) for whom Defendant (a) claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiffs Valdes and Diaz, or (b) does not claim it obtained prior express written consent.

(Doc. 30, ¶ 42). Plaintiffs bring three claims under the TCPA: Count I (on behalf of Diaz and the Prerecorded No Consent Class) – for calls made with prerecorded voice message without prior express written consent; Count II (on behalf of all Plaintiffs and the Autodialed No Consent Class) – for calls made with an autodialer without prior consent; and Count III (on behalf of Plaintiff Valdes, Plaintiff Diaz and the Do Not Call Registry Class) – for calls made to phone numbers on the DNC Registry (Id. at ¶¶ 48-62). Defendant has filed its Answer and Affirmative Defenses (Doc. 40) and mediation is scheduled for June 21, 2019 (Doc. 42).

Defendant asks for a stay "pending the forthcoming ruling from the [FCC] regarding the definition of an automatic telephone dialing system under the [TCPA]."

(Doc. 45 at 1). Defendant argues that the FCC is currently considering what constitutes an ATDS and, as Plaintiffs' second proposed class definition turns on the use of an ATDS, a stay is warranted under the primary jurisdiction doctrine and the Court's inherent authority to issue a stay.

### Standards of Law

> Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency. Even though the court is authorized to adjudicate the claim before it, the primary jurisdiction doctrine comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

Smith v. GTE Corp., 236 F.3d 1292, 1298 n.3 (11th Cir. 2001) (internal citations omitted). "[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." Boyes v. Shell Oil Products Co., 199 F.3d 1260, 1265 (11th Cir. 2000), quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1310 (2nd Cir.1990) (footnote omitted). "In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." United States v. Western Pac. R.R. Co., 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). "In determining whether to grant a stay, courts generally

examine three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." Scoma Chiropractic, P.A. v. Dental Equities, LLC, 2:16-CV-41-FTM-99MRM, 2018 WL 2455301, at *2 (M.D. Fla. June 1, 2018), citing Freedom Scientific, Inc. v. GW Micro, Inc., No. 8:05-cv-1365-T-33TBM, 2009 WL 2423095, *1 (M.D. Fla. July 29, 2009).

### Discussion

The TCPA makes it "unlawful for any person ... to make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A). The statute defines "automatic telephone dialing system" as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1). The FCC has issued several regulations interpreting the TCPA's scope and, in 2015 it reconsidered and reaffirmed its position that predictive dialers constitute an ATDS under the TCPA. See IN RE RULES & REGULATIONS IMPLEMENTING THE TEL. CONSUMER PROT. ACT OF 1991, 30 FCC Rcd. 7961, 7971-72 (2015). The FCC explained that "autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so. Hence, any equipment that has the requisite 'capacity' is an autodialer and is therefore subject to the TCPA." Id. at 7974.

"Following the FCC's 2015 order, several regulated entities 'sought to clarify various aspects of the TCPA's general bar against using automated dialing devices to make uninvited calls.'" Cline v. Ultimate Fitness Grp., LLC, Case No. 6:18-cv-771-Orl-37GJK, Doc. No. 65 at 4 (M.D. Fla. Feb. 12, 2019) (Dalton Jr., J.), citing ACA Int'l v. Fed.

Commc'n Comm'n, 885 F.3d 687, 691 (D.C. Cir. 2018) ("ACA"). As Judge Dalton recently explained:

> The ACA court found the FCC's "expansive interpretation of 'capacity'" to be "utterly unreasonable in the breadth of its regulatory [in]clusion." Id. at 696-99 (alteration in original) (citation omitted). Specifically, the ACA court found the FCC's interpretation untenable because it reasoned that "with the addition of software, [any smartphone] can gain the statutorily enumerated features of an autodialer and thus function as an ATDS," thus, "*any* uninvited call or message from a device is a statutory violation." Id. at 696-97 (emphasis in original).
>
> Besides the definition of "capacity," the ACA court also examined the "inadequacies in the [FCC]'s explanation of the requisite features" for an autodialer. Id. at 701. The ACA court concluded that the FCC's 2015 order provides "no meaningful guidance" as to determining why a smartphone would not qualify as an autodialer in one circumstance but meet the definition in another. Id. 699-700. The ACA court "set aside [] the [FCC]'s effort to clarify the types of calling equipment that fall within the TCPA's restrictions."

Cline, at 4-5. In the wake of the ACA decision the FCC began to solicit public comments on what constitutes an ATDS. See FCC Public Notice, "CONSUMER AND GOVERNMENTAL AFFAIRS BUREAU SEEKS COMMENT ON INTERPRETATION OF THE TELEPHONE CONSUMER PROTECTION ACT IN LIGHT OF THE D.C. CIRCUIT'S ACA INTERNATIONAL DECISION," CG Docket Nos. 18-152, 02-278; see also FCC Public Notice, "CONSUMER & GOVERNMENTAL AFFAIRS BUREAU SEEKS FURTHER COMMENT ON INTERPRETATION OF THE TEL. CONSUMER PROT. ACT IN LIGHT OF THE NINTH CIRCUIT'S MARKS V. CRUNCH SAN DIEGO, LLC DECISION, 2018 WL 4801356, at *1 (OHMSV Oct. 3, 2018) (seeking further comment on what constitutes "an automatic telephone dialing system."). To date, no decision has been rendered and there is no indication when (or if) a ruling may issue.

Defendant contends that this case should be stayed pending a ruling by the FCC that clarifies the definition of an ATDS under the TCPA. It argues that since the second

proposed class definition turns on the use of an ATDS, and that matter is within the special expertise of the FCC, such a ruling will have a "significant and likely dispositive impact on the merits questions before the Court in this case." Defendant notes the risk that if the matter is not stayed, the Court could reach a determination that is inconsistent with the FCC's ultimate decision. Defendant supports its arguments with decisions from courts, including courts in this district, that have imposed a stay of putative TCPA class actions pending a ruling by the FCC on the definition of an ATDS. See Secure v. Ultimate Fitness Group, LLC, 18-20483-CIV, 2019 WL 1612623, at *1 (S.D. Fla. Mar. 18, 2019); citing Buhr v. ADT LLC, No. 18-cv-80605, Doc. No. 40 (S.D. Fla. July 25, 2018); Eady v. Enhanced Recovery Co., LLC, 2018 U.S. Dist. LEXIS 143199, at *1-2 (M.D. Fla. Aug. 23, 2018) (granting unopposed motion to stay); and Scoma Chiropractic, P.A. , supra. Defendant says a stay "is likely to be very brief" (Doc. 45 at 3) and Plaintiffs will not be prejudiced as a stay will simplify the issues and streamline a trial, should one take place.

Plaintiffs have filed a three-count complaint and an FCC ruling on what constitutes an ATDS will not impact two of their claims. The existence of those two claims weighs heavily against staying the action. See, e.g., Grogan v. Aaron's Inc., 1:18-CV-2821-AT, 2018 WL 6040195, at *8 (N.D. Ga. Oct. 26, 2018) (where a plaintiff asserted an ATDS claim and a claim for using a prerecorded voice message - motion to stay denied as the FCC's potential rulemaking related to an ATDS has "no bearing on the viability" of plaintiff's second claim, quoting Holcombe v. Credit Prot. Ass'n, LP, 44 F. Supp. 3d 1311, 1316 (M.D. Ga. 2014)); Pieterson v. Wells Fargo Bank, N.A., 17-CV-02306-EDL, 2018 WL 3241069, at *4 (N.D. Cal. July 2, 2018) ("[s]taying the case when an alternative theory of liability can move forward would unduly postpone adjudication of Plaintiffs' claims"); Gosneigh v. Nationstar Mortg., LLC, No. 8:16-CV-3040-T-33AEP, 2017 WL 435818, at *2

(M.D. Fla. Feb. 1, 2017) (declining to stay TCPA matter where the plaintiff alleged the defendant made "both calls using an ATDS and calls using an artificial or prerecorded voice"); Sliwa v. Bright House Networks, LLC, No. 2:16-cv-235-FtM-29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) (stay denied where "the appeal will not affect Plaintiff's contention that Bright House called him using a prerecorded or automated voice, which is an independent basis for stating a claim under the TCPA"). Defendant cites Eady as an example of a case that included other claims that was stayed. But, in Eady it was the *Plaintiff* who requested an unopposed stay. Interestingly, the stay in Eady has been lifted at the request of both parties who jointly noted: "Since the stay in this case was extended, the FCC has not taken any additional action (to the best of the parties' knowledge) that would indicate that the anticipated declaratory ruling and order is imminent." See Docket - No. 3:17-cv-1008-J-32PDB, Doc. 49, ¶ 14; Doc. 50.

While the Court acknowledges the expertise of the FCC and the likelihood that a decision by it could clarify the issue with respect to ATDS, that decision "could be years away and, even then, may face the same challenges as the 2015 FCC order, which would likely prompt another request for a stay." Cline, pp. 8-9. Indeed, although Defendant argues that the stay would be short because FCC Commissioner Michael O'Rielly issued remarks which "repeatedly stressed the need for quick-FCC action on the definition of an ATDS," the Commissioner appeared to acknowledge, in those same remarks, that despite the need, quick action is not likely:

> To be clear, the Commission is not sitting on its hands unaware of the TCPA debates brewing in the courts and affected boardrooms. **But, we are a busy agency.** Under this Chairman, we have been extremely focused on moving an aggressive, deregulatory, pro-consumer agenda that reflects current market realities. Failure to address TCPA is not a failure of leadership ... Instead, the onus is on you and others

> to raise awareness of the need for corrective actions to a much, much greater extent. **While I am already convinced of the need to act and can help somewhat, it's your job to convince my colleagues and agency staff to do so. May I humbly suggest that the advocacy on one lone industry will not be enough to truly move the needle.**

See https://www.fcc.gov/document/orielly-remarks-aca-intlwashington-insights-conference (last visited June 6, 2019) (emphasis added).

Since ACA was decided courts have split over its import and have issued varied and, at times, divergent opinions on the continuing viability of the FCC's prior orders, and the definition of an ATDS (Doc. 45 at 10-11). While cited for the purpose of illustrating the danger of inconsistent rulings, the Court finds the abundance of post-ACA cases supports a finding that the definition of an ATDS is not beyond the Court's capabilities. As Judge Dalton observed in Cline: "Upon consideration of the primary jurisdiction doctrine's purpose and the parties' arguments, the Court finds that its own familiarity with the relevant statutory and regulatory framework and relevant case law supports declining to apply the primary jurisdiction doctrine." Cline, p. 9.

This Court agrees that a stay is not warranted by the doctrine of primary jurisdiction. See Peralta v. Rack Room Shoes, Inc., No. 18-3738, 2018 WL 6331798, at *8 (E.D. La. Dec. 3, 2018) ("Since the District of Columbia Circuit's ACA International ruling, several district courts have considered whether to apply the primary jurisdiction doctrine to stay proceedings in anticipation of the FCC's guidance on the definition of ATDS, and nearly all of them (of which this Court is aware) have denied the motions to stay.")(collecting cases). A stay will unduly delay and therefore prejudice Plaintiffs with respect to the majority of their claims. Swift v. Bank of Am. Corp., No. 3:14-CV-1539-J-20PDB, 2015 WL 13333136, at *3 (M.D. Fla. June 18, 2015) (A stay "would prejudice the

Plaintiffs by delaying their day in court" and "by staying this action, this Court would be adding greater expense and delay to the litigants involved."). While a stay might eventually simplify the issues with respect to one aspect of this case, it would not reduce the burden of litigation on the parties or the Court as the other claims are due to proceed regardless of any eventual FCC ruling on the ATDS issue. Accordingly, the motion for stay is **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida on June 7, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record