**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO. 6:18-CV-01851-PGB-EJK

| | |
|---|---|
| **BRUCE WRIGHT, JORGE VALDES, EDWIN DIAZ,** individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **CLASS ACTION** |
| v. | |
| **EXP REALTY, LLC,** | |
| Defendant. | |

**CLASS COUNSEL'S MOTION FOR CLASS COUNSEL FEES AND**
**EXPENSES AND INCORPORATED MEMORANDUM IN SUPPORT**

## I.  INTRODUCTION

Representative Plaintiff Edwin Diaz and Defendant eXp Realty, LLC reached a class action settlement agreement ("Settlement Agreement" or "Agreement")[1] resulting in $26,910,000 of monetary relief to the Class.

eXp has also agreed to change its business practices that resulted in this litigation. Specifically, eXp has agreed to remove from its internal cloud-based platform for affiliated realtors training and instructional materials relating to cold call telemarketing, and to provide additional materials to its realtors concerning the requirements of the TCPA and other telemarketing laws and how to comply with them. To enact these changes in business practices, eXp has established an agent compliance committee that is responsible for generating the compliance materials and taking corrective action as to realtors who fail to comply with eXp's policies and federal and state laws restricting telemarketing. This meaningful remedial relief itself is valued at $17,081,672 to the Class and society over the next five years. See Economic Assessment of Remedial Relief in Class Action Settlement Agreement, prepared by Jon Haghayeghi, Ph.D., attached as Ex. 1 ("Haghayeghi Report").

The total economic value of the relief provided by the Settlement is therefore $43,991,672. This is an extraordinary result in a hard-fought case (1) involving a novel theory of realty brokerage vicarious liability developed by Class Counsel that

---

[1] Following the hearing on the motion for preliminary approval of the class action settlement, the parties submitted an amended settlement agreement, which is the operative Settlement Agreement and can be found at ECF 211-1. All capitalized terms used herein have the same definitions as those defined in the Agreement.

has been rejected by multiple courts across the country, and (2) which spanned multiple years – nearly reaching trial – despite repeated, consumer-unfriendly changes to TCPA and consumer class action law during its pendency.

For these, and the other reasons set forth in this memorandum and in the papers submitted in support of approval of the Settlement, pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel respectfully request that the Court enter an order approving Class Counsel's requested attorneys' fees of $8,970,000, equal to one-third of the Settlement's monetary relief and 20% of its total economic value, and out-of-pocket expenses of $106,262.05. The requested amount is in line with amounts approved in similar TCPA class settlements in this Circuit and across the country. The amount also reflects the risk and exceptional results corresponding to this case, and was specifically included in the notices to the Class.[2]

Accordingly, Class Counsel respectfully request that the Court approve the requested fees and expenses at or after the fairness hearing.[3]

## II. BACKGROUND

### a.  The Case Was Hard-Fought and Heavily Litigated

This case involved more than two years of active litigation involving extensive motion practice, discovery, expert work, trial preparation, and settlement efforts. Declaration of Avi Kaufman, attached as Ex. 2; Declaration of Stefan

---

[2] The Court-approved notice documents advise class members that Class Counsel intend to request fees in an amount not to exceed one-third of the Settlement Sum and reimbursement of out-of-pocket expenses incurred in the litigation. *See* ECF 211-1 at Exhibits B and C.

[3] A proposed order that includes Class Counsel fees and expenses will be submitted with the Motion for Final Approval.

Coleman, attached as Ex. 3; Declaration of Jonas Jacobson, attached as Ex. 4.

On October 30, 2018, Plaintiff Bruce Wright filed the complaint against Defendant in this action asserting a claim under the TCPA's automatic telephone dialing system ("ATDS") provision (ECF 1).   On January 24, 2019, Plaintiffs Wright, Jorge Valdes and Edwin Diaz filed the amended complaint which added claims under the TCPA's prerecorded voice calls and National Do Not Call registry provisions (ECF 30). On February 21, 2019, Defendant answered the amended complaint (ECF 40).

Since that time, the case has involved extensive motion practice and trial preparation.

On May 17, 2019, Defendant filed a motion to stay the case pending FCC guidance on what constitutes an ATDS under the TCPA (ECF 45) and a motion to strike Plaintiffs' class allegations (ECF 46), a revised version of which was filed on May 20, 2019 (ECF 48). On May 31, 2019, Plaintiffs filed their response to the motion to stay (ECF 49), and, on June 3, 2019, Plaintiffs filed their response to the motion to strike (ECF 50). On June 7, 2019, the Court denied Defendant's motion to stay the case (ECF 51). On June 13, 2019, the Court denied Defendant's motion to strike the class allegations (ECF 55).

On September 25, 2019, Defendant filed a motion for summary judgment (ECF 59). On November 1, 2019, the parties filed a stipulation of agreed material facts (ECF 73), and Plaintiffs responded in opposition to the motion for summary judgment (ECF 74).

On October 25, 2019, Plaintiff Diaz moved for class certification (ECF 68). On November 22, 2019, Defendant filed its response to Plaintiff's motion (ECF 87), and on December 13, 2019, Plaintiff filed his reply in support of class certification (ECF 91).

In the midst of trial preparations, on January 22, 2020, Defendant filed a motion to stay pending the Supreme Court's decision in *Barr v. AAPC* regarding the constitutionality of the TCPA (ECF 94). On February 3, 2020, the parties filed their joint pretrial statement (ECF 96). On February 5, 2020, Plaintiffs responded in opposition to the motion to stay (ECF 97).  On February 7, 2020, the Court granted the stay pending the *Barr* decision, and after *Barr* was decided, following additional briefing, on August 12, 2020, the Court continued the stay pending the Supreme Court's decision in *Facebook Inc. v. Duguid* regarding what constitutes an ATDS (ECF 108).

On April 15, 2021, after the Supreme Court's *Facebook* ruling, the stay was lifted and an amended case management schedule was entered (ECF 118 & 119). On May 13, 2021, Plaintiff Diaz filed a renewed motion for class certification (ECF 125), and Defendant filed a renewed motion for summary judgement (ECF 123). The renewed motions were fully briefed as of June 23, 2021 (ECF 127, 131, 137, & 138).

Thereafter, the parties again turned their focus to trial preparation. On August 18, 2021, Plaintiffs moved to strike Defendant's amended initial disclosures (ECF 160), and on September 1, 2021, Defendant filed its response to the motion to strike

(ECF 169). On August 24, 2021, the parties filed a renewed joint pretrial statement (ECF 161). On August 31, 2021, the parties filed motions in limine (ECF 165 & 166). The motions in limine were both fully briefed as of September 14, 2021 (ECF 172 & 173). The parties also filed their objections to each other's deposition designations and counter designations (ECF 170 &171).

On September 29, 2021, the Court granted class certification and directed the parties to submit proposed notices (Sealed ECF 174). On October 12, 2021, in conjunction with preparing notices and a notice plan, Plaintiffs filed a motion to overrule Defendant's objection to the production of certain call records (ECF 176). While the motion was denied, the parties and third parties relevant to the objection further met and conferred regarding the call records necessary to implement notice. On October 15, 2021, the parties submitted joint class notice forms (ECF 178) and Plaintiffs filed a motion to approve the notice plan (ECF 179).

Also on October 15, 2021, Defendant filed a motion to stay or reopen discovery (ECF 181) and a motion to enforce the scheduling order or for protective order (ECF 183). On October 19, 2021, third party Mojo filed a motion for clarification (ECF 189) and Plaintiffs responded to Defendant's motion to enforce the scheduling order or for protective order (ECF 190).  On October 21, 2021, the Court denied Defendant's motion to stay or reopen discovery, denied the motion to enforce the scheduling order, granted the motion for protective order, and provided clarity to Mojo (ECF 191, 192, & 193).

On October 26, 2021, Defendant filed a partial motion to dismiss based on

personal jurisdiction as to non-Florida Class Members (ECF 194). On November 17, 2021, Plaintiffs responded to the motion (ECF 198).

Motion practice in this case extended to the Eleventh Circuit of Appeals. On October 13, 2021, Defendant petitioned the Eleventh Circuit for permission to appeal this Court's class certification order. *eXp Realty, LLC v. Wright*, No. 21-90027-G, ECF 1 (11th Cir. 2021). On October 25, 2021, Plaintiff submitted his opposition to Defendant's petition. *See id.*

Like motion practice in this case, discovery was fulsome, involving multiple waves of written discovery between the parties, multiple waves of third party subpoenas, expert discovery relating to multiple expert reports relating to multiple different disciplines, and five depositions. Plaintiffs subpoenaed Plaintiff Diaz's telephone carrier, six eXp realtors, and six vendors associated with lead generation and dialing systems. The written discovery and subpoenas resulted in the production of tens of thousands of pages of electronic documents relating to Defendant's realtors' calling practices. Kaufman Decl. ¶ 15.

And just as the parties invested in motion practice, discovery, and trial preparation, they also expended significant effort trying to resolve the case.

On November 22, 2019, the Parties attended a full day mediation with Hon. James F. Holderman (Ret.) at JAMS in Chicago.

On November 15, 2021, the Parties engaged in a second full-day, in person mediation, this time with Hunter Hughes in Atlanta. *Id.* at ¶ 18. The Parties engaged in further negotiations over the course of the following days with Mr. Hughes'

assistance, reaching an agreement as to the outline of a class wide resolution (*see* ECF 199). *Id*. The parties then engaged in months of additional, adversarial negotiations culminating in the Settlement Agreement. *Id*.

And since the Court preliminarily approved the Settlement, Class Counsel have continued to invest significant time and economic resources towards the administration of the Settlement, including efforts to increase Class member claims at their own expense for which they are not seeking reimbursement (ECF 214).

### b. The Case Involved Significant Risk Due to Plaintiffs' Novel Theory of Realty Brokerage Vicarious Liability and the Ever-Changing TCPA and Consumer Law Landscape

In addition to the constant risk posed by eXp's many dispositive motions and other filings, this case involved significant risk due to (1) Plaintiffs' novel liability theory and (2) changes in TCPA and consumer class action law that materialized during its pendency.

At the time this case was filed, no court had certified a class on a similar theory of realty brokerage vicarious liability or found the theory otherwise viable in any legal context. Indeed, Class Counsel are at the forefront of this novel theory of vicarious liability and are not aware of a single such case being filed in any court before Class Counsel began pursuing it. *See, e.g.*, *Wright v. Keller Williams Realty, Inc.*, No. 2:18-cv-635 (W.D. Wash.) (complaint filed May 2, 2018); *Wright v. La Rosa Realty, LLC*, No. 6:18-cv-734 (M.D. Fla.) (complaint filed May 11, 2018); *Gonzalez v. Related ISG Realty, LLC*, No. 1:18cv23238 (S.D. Fla.) (complaint filed August 9, 2018); *Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411 (D.N.J.)

(complaint filed February 11, 2019); *St John v. Keller Williams Realty*, No. 6:19-cv-1347-Orl-40DCI (M.D. Fla.) (complaint filed July 22, 2019); *Declements v. My Home Group Real Estate LLC*, No. 2:20-cv-362 (D. Ariz.) (complaint filed February 19, 2020).

Since then, district courts across the country have repeatedly disagreed about the viability of Class Counsel's vicarious liability theory. *Compare Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411, 2019 U.S. Dist. LEXIS 182616 (D.N.J. Oct. 21, 2019) (denying brokerage's motion to dismiss); *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 U.S. Dist. LEXIS 128877 (M.D.N.C. July 22, 2020) (same); *St John & Luis Penuela v. Keller Williams Realty*, No. 6:19-cv-1347-Orl-40DCI, 2020 U.S. Dist. LEXIS 257506 (M.D. Fla. Feb. 4, 2020) (same); *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309-JD, 2022 U.S. Dist. LEXIS 52650 (N.D. Cal. Mar. 23, 2022) (granting class certification); *with Rahimian v. Adriano*, No. 2:20-cv-02189-GMN-VCF, 2022 U.S. Dist. LEXIS 46437 (D. Nev. Mar. 16, 2022) (granting brokerage's motion to dismiss); *Dave v. Century 21 Real Estate, LLC*, No. CA: 4:20-cv-00840-JD, 2021 U.S. Dist. LEXIS 225282 (D.S.C. Sep. 15, 2021) (same); *Valdes v. Nationwide Real Estate Execs.*, No. SA CV 20-01734-DOC-(JDEx), 2021 U.S. Dist. LEXIS 100931 (C.D. Cal. Apr. 22, 2021) (same); *Macdonald v. Keller Williams Realty, Inc.*, No. CV-20-00138-PHX-SMB (D. Ariz. Jan. 28, 2021) (same); *DeClements v. RE/MAX LLC*, No. 1:20-cv-02075-DDD-SKC, 2020 U.S. Dist. LEXIS 253299 (D. Colo. Oct. 13, 2020) (same); *Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 U.S.

8

Dist. LEXIS 130213 (D. Ariz. July 23, 2020) (granting brokerage owner/operator's motion to dismiss).

In fact, just a few months before class certification was initially briefed in this case, a district court issued a first of its kind decision rejecting the same vicarious liability theory and denying class certification against a national brokerage in a case that was filed the same month as this one. *Chinitz v. NRT W., Inc*., No. 18-cv-6100, 2019 U.S. Dist. LEXIS 148699 (N.D. Cal. Aug. 30, 2019).

There was therefore at the time of filing significant risk involved in diligently pursuing a case based on an unproven theory of liability that has since been repeatedly rejected.

Relatedly, at the time of filing, there was considerable risk that the ever-changing TCPA and consumer law landscape could ultimately undermine the Plaintiffs' claims in part or in whole – just as it in fact did during the case.

Just a few months before this case started, in March 2018, the D.C. Circuit held that the FCC's long-standing, consumer-friendly interpretation of what constituted an automatic telephone dialing system under the TCPA was no longer valid. *See, e.g.,* ECF 45. Consistent with that, after Plaintiffs had engaged an expert relating to whether the dialers eXp's realtors used constituted automatic telephone dialing systems and briefed class certification (including as to a claim under the automatic telephone dialing provision, which was the Plaintiffs' most straightforward claim with the largest potential class), the Eleventh Circuit interpreted the term in the most limited possible manner, *see, e.g.,* ECF 95, and that

interpretation was upheld by the Supreme Court in *Facebook* requiring Plaintiffs to abandon their automatic telephone dialing system claim and proposed class.

Similarly, during this case, the Supreme Court and Eleventh Circuit have issued opinions relating to class action standing and TCPA standing, respectively, heightening the requirements for demonstrating standing in class actions generally and TCPA cases specifically. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) (requiring each class member to have standing); *Grigorian v. FCA US Ltd. Liab. Co.*, 838 F. App'x 390 (11th Cir. 2020) (in a non-binding opinion, *see* 11th Cir. R. 36-2, holding that the receipt of a ringless voicemail does not confer standing); *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) (holding that the receipt of a text message does not confer standing); *see also Barnes v. Allsup Emp't Servs., LLC*, No. 21-cv-21121, 2022 U.S. Dist. LEXIS 117003 (S.D. Fla. July 1, 2022) (denying class certification in a prerecorded voice calls case based on standing); *Audish v. Nat'l Health Connect LLC*, No. 21-cv-61457, 2022 U.S. Dist. LEXIS 114107 (S.D. Fla. June 28, 2022) (finding that the receipt of a single prerecorded call resulting in a voicemail does not confer standing).

And these unfavorable changes to the law relating to the determination of what constitutes an automatic telephone dialing system and standing were not even the most severe threats to the viability of Plaintiffs' claims posed by a potential change in the law during the pendency of this case. Instead, a potential ruling by the Supreme Court in *Barr* that the TCPA was unconstitutional and irreparable was because it would have defeated all of Plaintiffs' claims after class certification and summary

judgment had been briefed and trial preparation had commenced in earnest (the first time). *Compare Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 506 F. Supp. 3d 1242 (M.D. Fla. 2020) (Moody, J.) (dismissing TCPA claims for lack of subject matter jurisdiction and finding that the TCPA was unconstitutional and unenforceable for calls made between November 2015 and July 2020) *with Boisvert v. Carnival Corp.*, No. 8:20-cv-2076-30SPF, 2021 U.S. Dist. LEXIS 47397, at *7 (M.D. Fla. Mar. 12, 2021) (Moody, J.) (denying substantively identical motion and finding, "In sum, '[b]ecause the Supreme Court has invalidated and severed the government-debt exception from the remainder of § 227(b)(1)(A)(iii), the exception did not affect the remainder of the statute and the statute remains enforceable, at least against non-government debt collectors, as to calls made between November 2015, and July 6, 2020.'").

Class Counsel therefore faced considerable risk at the time they began litigating this case and throughout it.

### c.  The Settlement Provides Meaningful Monetary and Remedial Relief to the Class and Society

The Settlement provides monetary relief of $90 per claim net of any award of attorneys' fees and expenses. If the Court grants Class Counsel's requested fees and expenses, each claimant will receive approximately $60. This amount exceeds the per claim payouts in the vast majority of TCPA class action settlements, including in cases involving allegations of vicarious liability and/or involving direct liability against large companies like eXp. *See, e.g., In re Monitronics Int'l*, No. 1:13-

MD-2493, ECF 1214 (N.D.W. Va. June 12, 2018) (in a vicarious liability case with a certified adversarial class, like here, granting final approval to $28 million TCPA settlement estimated to result in a payout of $38 per claim); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (in a direct liability case, granting final approval with a $39.66 payout per claim); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (direct liability; $20-$40 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (direct liability; $30 per claimant); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10,  2014) (direct liability; $46.98 per claimant); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga.  Jan. 30, 2017) (direct liability; $24 per claimant; deemed an "excellent result"); *Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV, ECF 86 (S.D. Fla. Jan. 16, 2020) (direct liability; $10 voucher and $5 in cash, less attorneys' fees, costs, notice and administration costs, and service award, per claimant); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722, ECF 44 (S.D. Fla. Nov. 1, 2019) (direct liability; $9, less attorneys' fees, costs, administration costs, and service award, per claimant); *Cabiness v. Educ. Fin. Sols., LLC*, 2019 U.S. Dist. LEXIS 50817, at *12 (N.D. Cal. Mar. 26, 2019) (direct liability; $33.36 per claimant). *See also Hamilton v. SunTrust Mortg. Inc.*, No. 13-cv-60749, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (in claims-made settlements, the total value of the benefits made available by the settlement, and not the structure or claims rate, dictate the determination of "fairness, reasonableness, or adequacy" of the settlement and class counsel's requested

12

attorneys' fees).

The Settlement also provides valuable remedial relief consisting of changes to eXp's business practices that resulted in this litigation. Specifically, eXp has agreed to remove from its internal cloud-based platform for affiliated realtors training and instructional materials relating to cold call telemarketing, and to provide additional materials to its realtors concerning the requirements of the TCPA and other telemarketing laws and how to comply with them. To enact these changes in business practices, eXp has established an agent compliance committee that is responsible for generating the compliance materials and taking corrective action as to realtors who fail to comply with eXp's policies and federal and state laws restricting telemarketing. Kaufman Decl. ¶ 39.

To assign a dollar value to the remedial relief provided to the Class, an economist, Dr. Haghayeghi, was engaged to perform an economic assessment. As part of that assessment, Dr. Haghayegi determined the anticipated effect of eXp's business practice changes on realtor telemarketing conduct and the corresponding consumer willingness to pay for such changes, concluding that over the next five years the remedial relief has a mean present discounted value of $17,081,672. Haghayeghi Report at 10-11. Similar consumer willingness to pay analyses have been accepted by courts for valuing remedial relief in TCPA class settlements. *See Beiswinger v. West Shore Home LLC*, Case No. 3:20-cv-01286-HES-PDB, ECF 36 (M.D. Fla. May 26, 2022) (Schlesinger, J.) (granting final approval to a TCPA class settlement aided by Dr. Haghayeghi's valuation of the remedial relief); *De Los*

13

*Santos v. Milward Brown, Inc.*, Case No. 9:13-cv-80670, ECF 82-3 and 84 (S.D. Fla., Sep. 11, 2015) (granting final approval to a TCPA class settlement aided by Dr. Haghayeghi's late colleague Dr. J. Herbert Burkman's valuation of the remedial relief).

The total economic value of the Settlement's relief is therefore $43,991,672 to the Class and society. Ultimately, the Settlement confers substantial and immediate benefits upon the Class and others whereas continued and protracted litigation may have ultimately delivered none given the risks presented by the challenges of establishing Plaintiffs' novel vicarious liability theory, the ever changing TCPA and consumer class action law landscape, and the uncertainties of contested litigation, including at trial and on appeal. *See* Kaufman Decl. ¶ 40.

## III.   ARGUMENT

### a.  Class Counsel's Requested Fees and Expenses are Fair, Reasonable, and Justified, and Should be Approved

Pursuant to the Agreement, as indicated in the notices to the Class, and consistent with Eleventh Circuit law, Class Counsel respectfully request an award of attorneys' fees of $8,970,000, which is 20% of the Settlement's total economic value and one-third of its monetary component. *See, e.g., Holmes v. Wca Mgmt. Co., L.P.*, No. 6:20-cv-698-PGB-LRH, 2022 U.S. Dist. LEXIS 52756, at *5 (M.D. Fla. Jan. 12, 2022) (awarding fees in a lightly litigated case involving a similar claims-made structure as here: "Pursuant to Fed. R. Civ. P. 23(h), and consistent with the Eleventh Circuit's decision in *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ('Henceforth

14

in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'), the Court hereby awards Class Counsel Attorneys' Fees and Expenses in the amount of one-third … of the gross Settlement Fund, payable pursuant to the terms of the Settlement Agreement, plus … litigation costs."). Class Counsel also respectfully request that they be reimbursed for their reasonable out of pocket expenses of $106,262.05. *See id.* The Settlement is not contingent on the award of any Class Counsel fees or expenses. Kaufman Decl. ¶ 20.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774. The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as attorneys' fees to class counsel in class actions:

    (1)    the time and labor required;

    (2)    the novelty and difficulty of the relevant questions;

    (3)    the skill required to properly carry out the legal services;

    (4)    the preclusion of other employment by the attorney as a result of her acceptance of the case;

    (5)    the customary fee;

    (6)    whether the fee is fixed or contingent;

    (7)    time limitations imposed by the clients or the circumstances;

    (8)    the results obtained, including the amount recovered for the Clients;

    (9)    the experience, reputation, and ability of the attorneys;

15

(10)   the "undesirability" of the case;

(11)   the nature and the length of the professional relationship with the clients; and

(12)   fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775.

As applied, these *Camden I* factors support the requested fee here.

### 1. The Case Required Substantial Time and Labor and as a Result Precluded Other Employment By Class Counsel

Plaintiffs' and the Class's claims demanded considerable time and labor, precluding other employment by Class Counsel, and making the requested fee fair, reasonable, and justified. Kaufman Decl. ¶¶ 2-19, 41-56; Coleman Decl. ¶¶ 7-18; Jacobson Decl. ¶¶ 8-14. As detailed above and in counsel's declarations, this case went the distance and required thousands of hours of attorney time. It was fiercely litigated for more than two years and settled only after extensive motion practice, discovery, a petition to appeal, and other proceedings, including disclosure of multiple experts and two rounds of trial preparation.

The first and fourth *Camden I* factors therefore "militate in favor of a high-end fee." *See Baez v. LTD Fin. Servs., L.P.*, No. 6:15-cv-1043-Orl-40TBS, 2019

U.S. Dist. LEXIS 86949, at *6-7 (M.D. Fla. May 23, 2019) ("This class action involved a novel legal theory and was fiercely litigated by the parties. These factors militate in favor of a high-end fee. The preclusion of other employment also weighs in Plaintiff's favor because significant time was required to litigate this matter ….").

### 2. The Issues in this Case Were Novel and Difficult, Making the Case Undesirable, Presenting Significant Risk, and Requiring the Skill of Talented and Experienced Attorneys

In any given case, class counsel's skill should be commensurate with the novelty and complexity of the issues, as well as opposing counsel's skill. Litigation of this case required counsel trained in class action law and procedure as well as the specialized issues presented here. Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide class action cases, and their participation added value to the representation of this Class. Kaufman Decl. ¶¶ 31-36; Coleman Decl. ¶¶ 3-4. To date, not including this Settlement, Class Counsel have recovered over $100 million through class action settlements for the benefit of consumers, including more than $35 million in TCPA cases. Kaufman Decl. ¶ 32.

Moreover, Plaintiffs' theory of realty brokerage vicarious liability was novel and difficult, making the case undesirable and risky, and requiring the skill of highly talented attorneys. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001) ("A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including … thorny factual circumstances, or the possible financial outcome of a case. All of this and more is

enveloped by the term 'undesirable.'").

As detailed above and in counsel's declarations, Class Counsel were at the forefront of pursuing this theory and, over the course of four years doing so, courts have continued to be divided regarding the theory's viability. In fact, in the first ruling on class certification in any such case, just a few months before class certification was first briefed here (brought by other counsel with whom Class Counsel in this case have since worked to successfully obtain class certification in a successor case, *see Bumpus*, 2022 U.S. Dist. LEXIS 52650, another district court found that Plaintiffs' theory of realty brokerage vicarious liability could not be demonstrated on a class wide basis. *Chinitz*, 2019 U.S. Dist. LEXIS 148699. Notwithstanding, Class Counsel succeeded in obtaining class certification.

Similarly, Class Counsel successfully navigated this case through changes in TCPA and consumer class action law that resulted in dispositive orders and denial of class certification in substantively similar TCPA class actions.

Finally, in evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). For the vast majority of the litigation, eXp was represented by extremely capable counsel from top law firm Squire Patton Boggs, including lead counsel Eric Troutman who is nationally renowned as a TCPA defense attorney, *see, e.g.,* www.TCPAworld.com. They are worthy, highly competent adversaries. Kaufman Decl. ¶ 31.

The second, third, ninth, and tenth *Camden I* factors – including risk of

obtaining no recovery after years of litigation – therefore "weigh in favor of a high-range fee award." *See Baez*, 2019 U.S. Dist. LEXIS 86949, at *6-7 ("This class action involved a novel legal theory and was fiercely litigated by the parties. These factors militate in favor of a high-end fee. … Moreover, the amount involved, results obtained, and the experience, reputation, and ability of the attorneys weigh in favor of a high-range fee award."); *see also Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-890-PGB-LRH, 2021 U.S. Dist. LEXIS 52898, at *18 (M.D. Fla. Mar. 19, 2021) (awarding the highest available contingency fee multiplier under Florida state law: "The Court finds that Plaintiff's success was unlikely at the outset of this litigation. Plaintiff's theory … had never been tested in the courts, and the relevant statute appeared to favor insurers. … Moreover, advancing this theory—particularly through a class action—would require an enormous outlay of capital, would take several years, and would be a complex and hard-fought battle against a well-resourced opponent with a reputation for aggressive defense.").

### 3. Class Counsel Achieved a Successful Result

In determining whether a fee award is reasonable, courts must evaluate the results achieved, *i.e.*, the benefit to the class and society from the litigation. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). This factor addresses monetary relief as well as the value of any remedial relief. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (the right to fees "must logically extend, not only to litigation that confers a monetary benefit on others, but also litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests' of those others"); *Cook v. Gov't Emples. Ins.*

19

*Co.*, No. 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956, at *32 (M.D. Fla. June 22, 2020) ("This Court notes that the monetary value of all claims under the terms of the Settlement Agreement for Transfer Fees and prejudgment interest is approximately $61.90 million, which includes approximately $27.54 million in cash available for claimants, $28.76 million in prospective relief from GEICO's change in practice over a five-year period, and $5.6 million in attorneys' fees ….").

Given the significant litigation risks the Class faced and would continue to face, the Settlement represents a successful result. Rather than facing further costly and uncertain pre-trial litigation (including a likely motion to decertify the class), trial, and appeals, the Settlement makes available an immediate cash benefit of nearly $27 million to the Class and provides meaningful remedial relief that will prevent future unsolicited telemarketing calls, with a mean total present, discounted economic value of $17,081,672. Kaufman Decl. ¶ 38; Haghayegi Report at 10-11. In addition to these economic benefits, Class Counsel also secured other "favorable terms" as part of the Settlement, including "robust notice, a simple and streamlined claims' process, and narrowly tailored release" that support the conclusion that the requested fees are warranted. *See Cook*, 2020 U.S. Dist. LEXIS 111956, at *32-33.

And this conclusion is not changed by the claims-made structure of the settlement or the claims rate. The Eleventh Circuit and district courts in this Circuit have determined that the adequacy of a settlement's relief and class counsel's corresponding entitlement to fees should be evaluated based on the value of the benefits made available by the settlement, and not the amount actually claimed. *See*

20

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming fee award of one-third of total amount made available to class, and determining that attorney's fees may be determined based on the total benefits available, even where the actual payments to the class following a claims process are lower); *Holmes*, 2022 U.S. Dist. LEXIS 52756, at \*5 (awarding one-third of the reversionary common fund in attorneys' fees without regard for the claims rate); *Saccoccio v. JP Morgan Chase Bank, NA*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (same); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1333 (same); *see also Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving settlement class when less than 1% of class members filed claims); *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726, 2015 U.S. Dist. LEXIS 151744, at \*48-50 (S.D. Fla. Nov. 9, 2015) ("Courts in this Circuit have approved claims-made class settlements where the claims rate was low, including approving single-digit claims rates. . . . In addition, courts often grant final approval of class action settlements before the final claims deadline. . . . The question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided.") (internal citations omitted).

In fact, the relief obtained for the Class is the best relief because it was the only real relief possible without significant additional risk. eXp has made clear that

it would not have settled the case using any other structure and would have instead awaited a ruling on its appellate petition, and if unsuccessful, tried the case, and, if again unsuccessful, filed a post-trial appeal. Kaufman Decl. ¶ 40; *cf. Cook*, 2020 U.S. Dist. LEXIS 111956, at *24 (finding that a reversionary settlement provided the only and therefore best relief). And notably, consistent with the views of Class Counsel and Representative Plaintiff regarding the adequacy of Settlement relief, to date, only two Class Members have opted out of the Settlement and no Class Members have objected to any aspect of the Settlement (including Class Counsel's request for fees and expenses previewed in the notices). Kaufman Decl. ¶ 40.

The eighth *Camden I* factor therefore supports the requested fee award.

### 4. Class Counsel Assumed the Risks of Pursuing this Case on a Pure Contingency Basis

"The importance of ensuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304-JFA, 2020 U.S. Dist. LEXIS 143893, at *35 (D.S.C. July 29, 2020) ("class counsel undertook to prosecute this action without any assurance of payment for their services. Counsel's entitlement to payment was entirely dependent upon achieving a good result for Plaintiff and the class. Contingency fee arrangements are customary in class action cases and such arrangements are usually one-third or higher. Therefore,

this factor supports the reasonableness of the requested fee award" (internal citation omitted)). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)); *see also Birch v. Office Depot Inc.*, No. 06 CV 1690 DMS (WMC), 2007 U.S. Dist. LEXIS 102747, at *7 (S.D. Cal. Sep. 28, 2007) ("Class Counsel has proceeded on a contingency basis despite the uncertainty of any fee award. Class Counsel risked that it would not obtain any relief on behalf of Plaintiff or the Class, and so no recovery of fees. In addition, Class Counsel was precluded from pursuing other potential sources of revenue due to its prosecution of the claims in this action.").

Because Class Counsel were working entirely on a contingency basis, only a successful result – at trial or by settlement – would result in any fees and recovery of expenses. Kaufman Decl. at ¶¶ 59-61. Nevertheless, Class Counsel spent over 2,800 hours and more than $175,000 to zealously promote the Class's interests. Kaufman Decl. at ¶¶ 44, 59; Coleman Decl. at ¶¶ 9, 18-19. The sixth *Camden I* factor therefore strongly favors approving the requested fee.

### 5. The Fee Request Comports with Fees Awarded in Similar Cases

Counsel's requested fee equal to 20% of the Settlement's total economic value and one third of its monetary relief, is well within the range of fees typically awarded in similar cases. Numerous decisions within and outside of the Middle District of Florida and the Eleventh Circuit have found that a fee of one-third of a settlement's value is the benchmark fee percentage under *Camden I* factors. *E.g.*, *Belin v. Health*

23

*Ins. Innovations, Inc.*, No. 19-cv-61430, 2022 U.S. Dist. LEXIS 70141 (S.D. Fla. Apr. 15, 2022) (collecting cases in this Circuit awarding one-third or more of the class settlement fund and awarding approximately $9 million in attorneys' fees constituting one third of the $27.5 million settlement fund); *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175, at *16 (M.D. Fla. Apr. 23, 2020) (in a case in which the defendant was represented by the same counsel as eXp, collecting cases and stating that "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund" and approving fees of more than one third of TCPA settlement fund); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fee awards).

Finally, Class Counsel's fee request also falls specifically within the range of awards in TCPA cases within this Circuit. *See Beiswinger*, ECF 36 (M.D. Fla. 2022) (granting fees equal to one-third of the settlement fund and less than one-third of the settlement's value including remedial relief); *Hanley*, 2020 U.S. Dist. LEXIS 89175, at *16 (granting more than one-third in fees); *Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting one third of the $8,000,000 fund in fees which was less than one-third of the total settlement value when including other benefits); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV

24

(S.D. Fla. April 11, 2017) (granting one-third in fees); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (same).

The twelfth *Camden I* factor therefore justifies the requested fee award.

### 6.  Class Counsel's Request for Expenses Is Reasonable

Rule 23(h) also permits the Court to "award . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Courts typically allow counsel to recover their reasonable out-of-pocket expenses. Indeed, courts normally grant expense requests in common fund cases as a matter of course." *Hanley*, 2020 U.S. Dist. LEXIS 89175, at *17 (collecting cases and approving cost award). The Settlement permits Class Counsel to seek reimbursement of their reasonable expenses.

Class Counsel have incurred expenses in the prosecution of this action for which they seek reimbursement totaling $106,662.05[4] for filing fees, process server fees, courtesy copy and mailing fees, depositions, expert fees, travel, and mediation fees. Kaufman Decl. ¶ 57; Coleman Decl. ¶ 19. These expenses were reasonable and necessary for prosecuting this action and are the types of expenses typically billed to clients in non-contingency matters, and therefore should be approved. *Id.*

## IV.   CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court award Class Counsel attorneys' fees of $8,970,000 and expenses of $106,662.05.

---

[4] Class Counsel are not seeking reimbursement for more than $70,000 in additional expenses associated with calling Class Members about the Settlement and preparing to disseminate adversarial notice prior to reaching a settlement in principle. *See, e.g.,* Coleman Decl. ¶ 18.

## Local Rule 3.01(g) Certification

I certify that counsel for Plaintiff met and conferred with counsel for Defendant on July 7, 2022, by videoconference, and Defendant reserves the right to oppose Class Counsel's fee request, but does not oppose Class Counsel's expenses request.

DATED July 8, 2022                  Respectfully submitted,

*/s/ Avi R. Kaufman*
Avi R. Kaufman (Trial Counsel)
Florida State Bar # 84382
kaufman@kaufmanpa.com
Rachel E. Kaufman
Florida State Bar # 87406
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
Florida State Bar # 30188
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Representative Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 8, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

<em>/s/ Avi R. Kaufman</em>