## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CASE NO. 6:18-CV-01851-PGB-EJK

| | |
|---|---|
| **BRUCE WRIGHT, JORGE VALDES, EDWIN DIAZ,** individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **CLASS ACTION** |
| v. | |
| **EXP REALTY, LLC,** | |
| Defendant. | |

## DECLARATION OF AVI R. KAUFMAN
## IN SUPPORT OF PLAINTIFF'S MOTION FOR
## CLASS COUNSEL FEES AND EXPENSES

Avi R. Kaufman declares as follows:

1.     I am one of the attorneys designated as Class Counsel under the Settlement Agreement entered into with Defendant eXp Realty, LLC.[1] I submit this declaration in support of Class Counsel's Motion for Class Counsel Fees and Expenses. Except as otherwise noted, I have personal knowledge of the facts set

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

forth in this declaration, and could testify competently to them if called upon to do so.

2.      This case involved more than two years of active litigation involving extensive motion practice, discovery, expert work, trial preparation, and settlement efforts.

3.      On October 30, 2018, Plaintiff Bruce Wright filed the complaint against Defendant in this action asserting a claim under the TCPA's automatic telephone dialing system ("ATDS") provision (ECF 1).  On January 24, 2019, Plaintiffs Wright, Jorge Valdes and Edwin Diaz filed the amended complaint which added claims under the TCPA's prerecorded voice calls and National Do Not Call registry provisions (ECF 30). On February 21, 2019, Defendant answered the amended complaint (ECF 40).

4.      Since that time, the case has involved extensive motion practice and trial preparation.

5.      On May 17, 2019, Defendant filed a motion to stay the case pending FCC guidance on what constitutes an ATDS under the TCPA (ECF 45) and a motion to strike Plaintiffs' class allegations (ECF 46), a revised version of which was filed on May 20, 2019 (ECF 48). On May 31, 2019, Plaintiffs filed their response to the motion to stay (ECF 49), and, on June 3, 2019, Plaintiffs filed their response to the motion to strike (ECF 50). On June 7, 2019, the Court denied Defendant's motion to stay the case (ECF 51). On June 13, 2019, the Court denied

2

Defendant's motion to strike the class allegations (ECF 55).

6.     On September 25, 2019, Defendant filed a motion for summary judgment (ECF 59). On November 1, 2019, the parties filed a stipulation of agreed material facts (ECF 73), and Plaintiffs responded in opposition to the motion for summary judgment (ECF 74).

7.     On October 25, 2019, Plaintiff Diaz moved for class certification (ECF 68). On November 22, 2019, Defendant filed its response to Plaintiff's motion (ECF 87), and on December 13, 2019, Plaintiff filed his reply in support of class certification (ECF 91).

8.     In the midst of trial preparations, on January 22, 2020, Defendant filed a motion to stay pending the Supreme Court's decision in *Barr v. AAPC* regarding the constitutionality of the TCPA (ECF 94). On February 3, 2020, the parties filed their joint pretrial statement (ECF 96). On February 5, 2020, Plaintiffs responded in opposition to the motion to stay (ECF 97).  On February 7, 2020, the Court granted the stay pending the *Barr* decision, and after *Barr* was decided, following additional briefing, on August 12, 2020, the Court continued the stay pending the Supreme Court's decision in *Facebook Inc. v. Duguid* regarding what constitutes an ATDS (ECF 108).

9.     On April 15, 2021, after the Supreme Court's *Facebook* ruling, the stay was lifted and an amended case management schedule was entered (ECF 118 & 119).  On May 13, 2021, Plaintiff Diaz filed a renewed motion for class certification

3

(ECF 125), and Defendant filed a renewed motion for summary judgement (ECF 123). The renewed motions were fully briefed as of June 23, 2021 (ECF 127, 131, 137, & 138).

10.     Thereafter, the parties again turned their focus to trial preparation. On August 18, 2021, Plaintiffs moved to strike Defendant's amended initial disclosures (ECF 160), and on September 1, 2021, Defendant filed its response to the motion to strike (ECF 169). On August 24, 2021, the parties filed a renewed joint pretrial statement (ECF 161). On August 31, 2021, the parties filed motions in limine (ECF 165 & 166). The motions in limine were both fully briefed as of September 14, 2021 (ECF 172 & 173). The parties also filed their objections to each other's deposition designations and counter designations (ECF 170 &171).

11.     On September 29, 2021, the Court granted class certification and directed the parties to submit proposed notices (Sealed ECF 174). On October 12, 2021, in conjunction with preparing notices and a notice plan, Plaintiffs filed a motion to overrule Defendant's objection to the production of certain call records (ECF 176).  While the motion was denied, the parties and third parties relevant to the objection further met and conferred regarding the call records necessary to implement notice. On October 15, 2021, the parties submitted joint class notice forms (ECF 178) and Plaintiffs filed a motion to approve the notice plan (ECF 179).

12.     Also on October 15, 2021, Defendant filed a motion to stay or reopen discovery (ECF 181) and a motion to enforce the scheduling order or for protective

4

order (ECF 183). On October 19, 2021, third party Mojo filed a motion for clarification (ECF 189) and Plaintiffs responded to Defendant's motion to enforce the scheduling order or for protective order (ECF 190). On October 21, 2021, the Court denied Defendant's motion to stay or reopen discovery, denied the motion to enforce the scheduling order, granted the motion for protective order, and provided clarity to Mojo (ECF 191, 192, & 193).

13.     On October 26, 2021, Defendant filed a partial motion to dismiss based on personal jurisdiction as to non-Florida Class Members (ECF 194). On November 17, 2021, Plaintiffs responded to the motion (ECF 198).

14.     Motion practice in this case extended to the Eleventh Circuit of Appeals. On October 13, 2021, Defendant petitioned the Eleventh Circuit for permission to appeal this Court's class certification order. *eXp Realty, LLC v. Wright*, No. 21-90027-G, ECF 1 (11th Cir. 2021). On October 25, 2021, Plaintiff submitted his opposition to Defendant's petition. *See id*.

15.     Like motion practice in this case, discovery was fulsome, involving multiple waves of written discovery between the parties, multiple waves of third party subpoenas, expert discovery relating to multiple expert reports relating to multiple different disciplines, and five depositions. Plaintiffs subpoenaed Plaintiff Diaz's telephone carrier, six eXp realtors, and six vendors associated with lead generation and dialing systems. The written discovery and subpoenas resulted in the production of tens of thousands of pages of electronic documents relating to

Defendant's realtors' calling practices.

16.     And just as the parties invested in motion practice, discovery, and trial preparation, they also expended significant effort trying to resolve the case.

17.     On November 22, 2019, the Parties attended a full day mediation with Hon. James F. Holderman (Ret.) at JAMS in Chicago.

18.     On November 15, 2021, the Parties engaged in a second full-day, in person mediation, this time with Hunter Hughes in Atlanta. The Parties engaged in further negotiations over the course of the following days with Mr. Hughes' assistance, reaching an agreement as to the outline of a class wide resolution (*see* ECF 199). The parties then engaged in months of additional, adversarial negotiations culminating in the Settlement Agreement.

19.     And since the Court preliminarily approved the Settlement, Class Counsel have continued to invest significant time and economic resources towards the administration of the Settlement, including efforts to increase Class member claims at their own expense for which they are not seeking reimbursement (ECF 214).

20.     Class Counsel respectfully request an award of attorneys' fees of $8,970,000, equal to one-third of the Settlement's monetary relief and 20% of its total economic value. Class Counsel also respectfully request that they be reimbursed for their reasonable out of pocket litigation expenses of $106,262.05. The Settlement is not contingent on the award of any Class Counsel fees or costs.

21.    In addition to the constant risk posed by eXp's many dispositive motions and other filings, this case involved significant risk due to (1) Plaintiffs' novel liability theory and (2) changes in TCPA and consumer class action law that materialized during its pendency.

22.    At the time this case was filed, no court had certified a class on a similar theory of realty brokerage vicarious liability or found the theory otherwise viable in any legal context. Indeed, Class Counsel are at the forefront of this novel theory of vicarious liability and are not aware of a single such case being filed in any court before Class Counsel began pursuing it. *See, e.g.*, *Wright v. Keller Williams Realty, Inc.*, No. 2:18-cv-635 (W.D. Wash.) (complaint filed May 2, 2018); *Wright v. La Rosa Realty, LLC*, No. 6:18-cv-734 (M.D. Fla.) (complaint filed May 11, 2018); *Gonzalez v. Related ISG Realty, LLC*, No. 1:18cv23238 (S.D. Fla.) (complaint filed August 9, 2018); *Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411 (D.N.J.) (complaint filed February 11, 2019); *St John v. Keller Williams Realty*, No. 6:19-cv-1347-Orl-40DCI (M.D. Fla.) (complaint filed July 22, 2019); *Declements v. My Home Group Real Estate LLC*, No. 2:20-cv-362 (D. Ariz.) (complaint filed February 19, 2020).

23.    Since then, district courts across the country have repeatedly disagreed about the viability of Class Counsel's vicarious liability theory. *Compare Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411, 2019 U.S. Dist. LEXIS 182616 (D.N.J. Oct. 21, 2019) (denying brokerage's motion to dismiss); *Hayhurst v. Keller*

*Williams Realty, Inc.*, No. 1:19CV657, 2020 U.S. Dist. LEXIS 128877 (M.D.N.C. July 22, 2020) (same); *St John & Luis Penuela v. Keller Williams Realty*, No. 6:19-cv-1347-Orl-40DCI, 2020 U.S. Dist. LEXIS 257506 (M.D. Fla. Feb. 4, 2020) (same); *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309-JD, 2022 U.S. Dist. LEXIS 52650 (N.D. Cal. Mar. 23, 2022) (granting class certification); *with Rahimian v. Adriano*, No. 2:20-cv-02189-GMN-VCF, 2022 U.S. Dist. LEXIS 46437 (D. Nev. Mar. 16, 2022) (granting brokerage's motion to dismiss); *Dave v. Century 21 Real Estate, LLC*, No. CA: 4:20-cv-00840-JD, 2021 U.S. Dist. LEXIS 225282 (D.S.C. Sep. 15, 2021) (same); *Valdes v. Nationwide Real Estate Execs.*, No. SA CV 20-01734-DOC-(JDEx), 2021 U.S. Dist. LEXIS 100931 (C.D. Cal. Apr. 22, 2021) (same); *Macdonald v. Keller Williams Realty, Inc.*, No. CV-20-00138-PHX-SMB (D. Ariz. Jan. 28, 2021) (same); *DeClements v. RE/MAX LLC*, No. 1:20-cv-02075-DDD-SKC, 2020 U.S. Dist. LEXIS 253299 (D. Colo. Oct. 13, 2020) (same); *Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 U.S. Dist. LEXIS 130213 (D. Ariz. July 23, 2020) (granting brokerage owner/operator's motion to dismiss).

24.     In fact, just a few months before class certification was initially briefed in this case, a district court issued a first of its kind decision rejecting the same vicarious liability theory and denying class certification against a national brokerage in a case that was filed the same month as this one. *Chinitz v. NRT W., Inc.*, No. 18-cv-6100, 2019 U.S. Dist. LEXIS 148699 (N.D. Cal. Aug. 30, 2019).

25.    There was therefore at the time of filing significant risk involved in diligently pursuing a case based on an unproven theory of liability that has since been repeatedly rejected.

26.    Relatedly, at the time of filing, there was considerable risk that the ever-changing TCPA and consumer law landscape could ultimately undermine the Plaintiffs' claims in part or in whole – just as it in fact did during the case.

27.    Just a few months before this case started, in March 2018, the D.C. Circuit held that the FCC's long-standing, consumer-friendly interpretation of what constituted an automatic telephone dialing system under the TCPA was no longer valid. *See, e.g.,* ECF 45. Consistent with that, after Plaintiffs had engaged an expert relating to whether the dialers eXp's realtors used constituted automatic telephone dialing systems and briefed class certification (including as to a claim under the automatic telephone dialing provision, which was the Plaintiffs' most straightforward claim with the largest potential class), the Eleventh Circuit interpreted the term in the most limited possible manner, *see, e.g.,* ECF 95, and that interpretation was upheld by the Supreme Court in *Facebook* requiring Plaintiffs to abandon their automatic telephone dialing system claim and proposed class.

28.    Similarly, during this case, the Supreme Court and Eleventh Circuit have issued opinions relating to class action standing and TCPA standing, respectively, heightening the requirements for demonstrating standing in class actions generally and TCPA cases specifically.

29.     And these unfavorable changes to the law relating to the determination of what constitutes an automatic telephone dialing system and standing were not even the most severe threats to the viability of Plaintiffs' claims posed by a potential change in the law during the pendency of this case. Instead, a potential ruling by the Supreme Court in *Barr* that the TCPA was unconstitutional and irreparable was because it would have defeated all of Plaintiffs' claims after class certification and summary judgment had been briefed and trial preparation had commenced in earnest (the first time). *Compare Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 506 F. Supp. 3d 1242 (M.D. Fla. 2020) (Moody, J.) (dismissing TCPA claims for lack of subject matter jurisdiction and finding that the TCPA was unconstitutional and unenforceable for calls made between November 2015 and July 2020) *with Boisvert v. Carnival Corp.*, No. 8:20-cv-2076-30SPF, 2021 U.S. Dist. LEXIS 47397, at *7 (M.D. Fla. Mar. 12, 2021) (Moody, J.) (denying substantively identical motion and finding, "In sum, '[b]ecause the Supreme Court has invalidated and severed the government-debt exception from the remainder of § 227(b)(1)(A)(iii), the exception did not affect the remainder of the statute and the statute remains enforceable, at least against non-government debt collectors, as to calls made between November 2015, and July 6, 2020.'").

30.     Class Counsel therefore faced considerable risk at the time they began litigating this case and throughout it.

31.     Class Counsel have extensive experience and expertise prosecuting complex class actions, and are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. For the vast majority of the litigation, eXp was represented by extremely capable counsel from top law firm Squire Patton Boggs, including lead counsel Eric Troutman who is nationally renowned as a TCPA defense attorney, *see, e.g.,* www.TCPAworld.com. They are worthy, highly competent adversaries.

32.     Since 2008, the attorneys of Kaufman P.A. have worked on consumer class action cases. To date, not including this Settlement, Class Counsel have recovered over $100 million through class action settlements for the benefit of consumers, including more than $35 million in TCPA cases. Kaufman P.A.'s attorneys have also successfully recovered millions of dollars in settlements and judgments for plaintiffs in breach of contract actions in the media, real estate, fashion, healthcare, telecommunications, and banking industries.

33.     I have a degree in government from Harvard University and a JD from Georgetown University Law Center, and have been practicing law for over ten years.  For more than five years after graduation, I was a litigation associate at the law firm of Carlton Fields in its national class action and commercial litigation practice groups.  During that time, I represented plaintiffs and defendants in various types of individual and class litigation, including securities and TCPA class actions. In 2016, I joined the law firm of Kopelowitz Ostrow Ferguson Weiselberg Gilbert

11

as a partner to work exclusively on consumer class actions. From 2016 until January 2018, when I departed KOFWG to start my own law firm, I represented plaintiffs in class actions arising from products defects, illegal payday loans, false advertising, and TCPA violations, including as lead counsel in a TCPA class action against CITGO Petroleum Corp. that settled for $8.3 million in 2017.

34.     I am a member of the Florida bar, and am admitted to practice in all federal district courts in Florida and in the Eleventh Circuit. I am also admitted to practice in the Eastern District of Wisconsin, Eastern District of Michigan, Northern District of Illinois, District of Colorado, Western District of Arkansas, and the Central District of Illinois.

35.     Rachel E. Kaufman, Esq. has degrees in communications and philosophy from Northwestern University and a JD from Boston University School of Law. Prior to joining Kaufman P.A., Rachel worked at Lash & Goldberg in its commercial litigation practice and Epstein, Becker & Green in its class action, commercial litigation, and healthcare practices. Rachel is a member of the California, Florida, and Washington, D.C. bars. Rachel is also admitted to practice in all federal district courts in California, the Southern and Middle Districts of Florida, the Eleventh Circuit and the Ninth Circuit.

36.     Since starting Kaufman P.A., I have focused almost exclusively on TCPA class actions, litigating in various jurisdictions across the country. Among other cases, our firm has been appointed class counsel in the following TCPA cases:

- *Broward Psychology, P.A. v. SingleCare Services, LLC* (Fla. Cir. Ct. 2019), a Florida Telephone Consumer Protection Act class action resulting in a $925,110 class wide settlement.

- *Van Elzen v. Educator Group Plans, et. al.* (E.D. Wis. 2019), a nationwide Telephone Consumer Protection Act class action resulting in a $900,000 class wide settlement.

- *Halperin v. YouFit Health Clubs, LLC* (S.D. Fla. 2019), a nationwide Telephone Consumer Protection Act class action resulting in a $1.4 million class wide settlement.

- *Armstrong v. Codefied Inc.* (E.D. Cal. 2019), a nationwide Telephone Consumer Protection Act class action resulting in a $2.2 million class wide settlement.

- *Itayim v. CYS Group, Inc.* (S.D. Fla. 2020), a Florida Telephone Consumer Protection Act class action resulting in a $492,250 class wide settlement.

- *Bulette v. Western Dental, et al.* (N.D. Cal. 2020), a nationwide Telephone Consumer Protection Act class action resulting in a $9.7 million class wide settlement.

- *Donde v. Freedom Franchise Systems, LLC et al.* (S.D. Fla. 2020), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $948,475.50 class wide settlement.

- *Izor v. Abacus Data Systems, Inc.* (N.D. Cal. 2020), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $1.95 million class wide settlement.

- *Fitzhenry v. Independent Home Products, LLC* (D.S.C. 2020), a nationwide Telephone Consumer Protection Act class action making $5.16 million available to the settlement class.

- *Judson v. Goldco Direct LLC* (C.D. Cal. 2020), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $1.5 million class wide settlement. (Final fairness hearing is scheduled for June 7, 2021).

- *Hicks v. Houston Baptist University* (E.D.N.C. 2021), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $375,000 class wide settlement.

- *Lalli v. First Team Real Estate* (C.D. Cal. 2021), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $478,500 class wide settlement. (pending Final Approval).

- *Fitzhenry, et al. v. Safe Streets USA LLC, et al.* (E.D.N.C. 2021), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $1.5 million class wide settlement.

- *Beiswinger v. West Shore Home LLC* (M.D. Fla. 2022), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $1,347,500 class wide settlement.

- *Bumpus, et al. v. Realogy Brokerage Group LLC* (N.D. Cal. 2022), appointed class counsel in a contested nationwide Telephone Consumer Protection Act class action.

- *Kenneth A. Thomas MD, LLC v. Best Doctors, Inc.* (D. Mass. 2022), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $738,375 class wide settlement. (Final Approval Hearing scheduled for October 2022).

37.    Class Counsel zealously represented Plaintiff and the Settlement Class Members' interests throughout the litigation and will continue to do so.

38.    Given the significant litigation risks the Class faced and would continue to face, the Settlement represents a successful result. Rather than facing further costly and uncertain pre-trial litigation (including rulings on the pending

dispositive motions and defending against a likely motion to decertify the class), trial, and appeals, the Settlement makes available an immediate cash benefit of nearly $27 million to the Class and provides meaningful remedial relief that will prevent future unsolicited telemarketing calls, with a mean total present, discounted economic value of $17,081,672. The Settlement provides monetary relief of $90 per claim net of any award of attorneys' fees and expenses. If the Court grants Class Counsel's requested fees and expenses, each claimant will receive approximately $60. This amount exceeds the per claim payouts in the vast majority of TCPA class action settlements, including in cases involving allegations of vicarious liability and/or involving direct liability against large companies like eXp.

39.     The Settlement also provides valuable remedial relief consisting of changes to eXp's business practices that resulted in this litigation. Specifically, eXp has agreed to remove from its internal cloud-based platform for affiliated realtors training and instructional materials relating to cold call telemarketing, and to provide additional materials to its realtors concerning the requirements of the TCPA and other telemarketing laws and how to comply with them. To enact these changes in business practices, eXp has established an agent compliance committee that is responsible for generating the compliance materials and taking corrective action as to realtors who fail to comply with eXp's policies and federal and state laws restricting telemarketing.

40.     The total economic value of the Settlement's relief is therefore

$43,991,672 to the Class and society. Ultimately, the Settlement confers substantial and immediate benefits upon the Class and others whereas continued and protracted litigation may have ultimately delivered none given the risks presented by the challenges of establishing Plaintiffs' novel vicarious liability theory, the ever changing TCPA and consumer class action law landscape, and the uncertainties of contested litigation, including at trial and on appeal. In fact, the relief obtained for the Class is the best relief because it was the only real relief possible without significant additional risk. eXp has made clear that it would not have settled the case using any other structure and would have instead awaited a ruling on its appellate petition, and if unsuccessful, tried the case, and, if again unsuccessful, filed a post-trial appeal. And notably, consistent with the views of Class Counsel and Representative Plaintiff regarding the adequacy of Settlement relief, to date, only two Class Members have opted out of the Settlement and no Class Members have objected to any aspect of the Settlement (including Class Counsel's request for fees and expenses previewed in the notices).

41.    Plaintiffs' and the Class's claims demanded considerable time and labor, precluding other employment by Class Counsel, and making the requested fee fair, reasonable, and justified. Below, I set forth the nature of the work performed and time expended by Kaufman P.A. in the Litigation to demonstrate why Class Counsel's request for attorneys' fees and expenses is reasonable and should be approved by the Court.

42.     I was involved in all major aspects of litigating this Litigation.  Those efforts generally fell into the following categories: (a) pre-filing investigation and pleadings; (b) post-filing investigation and discovery; (c) motion practice; (d) settlement; and (e) case and settlement management.

43.     I am the attorney who oversaw the day-to-day activities in this Litigation and have reviewed the firm's time records in connection with the preparation of this Declaration.  The purpose of this review was to confirm the accuracy of the time entries, as well as the necessity for, and reasonableness of, the time and expenses committed to this Litigation.  As a result of this review, I believe the time reflected herein and the expenses for which payment is sought are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation.  In addition, I believe that the expenses are all of a type that would be typically charged to an hourly fee-paying client in the private legal market.

44.     In total, Kaufman P.A. devoted 2006.9 hours to this litigation, as of April 8, 2022, the Law Offices of Stefan Coleman devoted 845.4 hours to this litigation, as of April 8, 2022, and Dovel & Luner devoted 143.4 hours to this litigation.[2]  A breakdown of the Kaufman P.A. hours devoted to this matter per attorney is provided below.

45.     Class Counsel has been awarded attorneys' fees as a percentage of the

_____

[2] Detailed billing records are available for the Court's in camera inspection on request.

fund in TCPA class actions based on lodestar cross-checks using Mr. Kaufman's hourly rate of $800 and Ms. Kaufman's and Mr. Coleman's hourly rate of $730. *See Beiswinger v. West Shore Home LLC*, Case No. 3:20-cv-01286-HES-PDB, ECF 36 (M.D. Fla. May 26, 2022); *Judson v. Goldco Direct, LLC*, Case No. 2:19-cv-06798-PSG-PLA, ECF 59 (C.D. Cal. Jun. 11, 2021); *Izor v. Abacus Data Sys.*, No. 19-cv-01057-HSG, 2020 U.S. Dist. LEXIS 239999, at *26-27 (N.D. Cal. Dec. 21, 2020); *Bulette v. Western Dental Services Inc.*, No. 3:19-cv-00612-MMC, ECF 82 (N.D. Cal. Jul. 17, 2020).  Courts in this district have found similar rates reasonable in similar class action settlements involving similarly specialized and successful class counsel. *Junior v. Infinity Ins. Co.*, No. 6:18-cv-1598-WWB-EJK, 2021 U.S. Dist. LEXIS 58354, at *10 (M.D. Fla. Mar. 25, 2021) (approving fee award based, in part, on the reasonableness of the lodestar cross-check, where counsel's hourly rates were $850 and $800), recommendation and order adopted and approved at ECF 72 (Apr. 29, 2021). *See also Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-890-PGB-LRH, 2021 U.S. Dist. LEXIS 52898, at *18 (M.D. Fla. Mar. 19, 2021) (finding that: (1) "Commercial class action law is sufficiently specialized that it should be considered a national market"; and (2) "previously awarded hourly rates provide an acceptable guidepost for determining the fee customarily charged in the locality for similar legal services" (internal citation omitted)).

46.     Based on the hourly rates of $730 for Ms. Kaufman and Mr. Coleman and $800 for Mr. Kaufman, the total lodestar amount for Class Counsel's time

expended to date in this action is $2,168,314. And the lodestar amount for co-counsel Dovel & Luner's time is $101,150. Accordingly, the lodestar amount is a 3.95 times multiplier of the requested fee—a multiplier well within the range approved in similar cases. In fact, a multiplier of 2.5-5 times lodestar is typically awarded in class actions in this Circuit to compensate for contingency risk. *E.g., In re Health Ins. Innovs. Sec. Litig.*, No. 8:17-cv-2186-TPB-SPF, 2021 U.S. Dist. LEXIS 61051, at *39-40 (M.D. Fla. Mar. 23, 2021); *Junior v. Infinity Ins. Co.*, No. 6:18-cv-1598-WWB-EJK, 2021 U.S. Dist. LEXIS 58354, at *11 (M.D. Fla. Mar. 25, 2021) (finding that a contingency multiplier of 3.85 is "justified because the legal theory behind this action was novel and Class Counsel was able to secure an exceptional result"); *Jimenez v. Pizzerias, LLC*, No. 1:16-CV-22035-KMM, 2017 U.S. Dist. LEXIS 129820, at *14 (S.D. Fla. Aug. 14, 2017); *Martin v. Glob. Mktg. Resch. Servs.*, No. 6:14-cv-1290-Orl-31KRS, 2016 U.S. Dist. LEXIS 164770, at *5 (M.D. Fla. Nov. 30, 2016); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (courts have used applied multipliers that range from less than two times the reasonable time charges to more than five times the reasonable charge).

47.     Moreover, the estimated lodestar does not include additional time that will be expended by Kaufman P.A. Based on my experience in prior class-wide litigation, I conservatively anticipate that Kaufman P.A. will expend more than 50 additional hours, on top of the below-itemized time, in drafting a motion for final approval, preparing for, traveling to, and attending the final fairness hearing,

continuing to oversee the notice program, overseeing the claims process for the settlement, and responding to Settlement Class members' inquiries.

### Pre-filing Investigation and Pleadings

48.    Before filing the Litigation, Kaufman P.A. conducted a thorough investigation into the facts of the case, including by investigating plaintiffs' relationship and experiences with Defendant, if any, extensively investigating the callers, Defendant and its business practices, as well as researching the potential claims plaintiff and the Class had against the Defendant. This phase also included reviewing plaintiffs' records related to the calls and evaluating necessary discovery to pursue the action. This phase also involved revising the Complaint and other initiating documents. After the initial pleading, this phase also involved revising the Amended Complaint.

| Timekeeper | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Avi R. Kaufman | $800 | 45 | $3,600 |

### Post-filing Investigation and Discovery

49.    In this phase of litigation the work performed by Kaufman P.A. included, but was not limited to, communicating with plaintiffs regarding the progress of the case; revising plaintiffs' initial disclosure and discovery responses; reviewing and producing documents; and preparing Representative Plaintiff for his deposition.

50.     This category also includes the extensive time spent strategizing regarding discovery, including areas of inquiry and potential third parties involved with Defendant's telemarketing; preparing and revising discovery requests to Defendant; investigating Defendant's practices and procedures, including by attending an eXp national convention at which lead generation and dialing platform vendors promote their products and services; preparing and revising subpoenas to third party vendors and agents; strategizing, preparing for and taking depositions of Defendant, and lead generation and dialing platform vendors; analyzing and reviewing Defendant's discovery responses; analyzing and reviewing third party subpoena responses; reviewing and analyzing thousands of documents, excel spreadsheets, and videos produced by Defendant; and reviewing and analyzing thousands of pages of electronic documents produced by third parties, including telephone carriers, lead generation and dialing platform vendors, and realtors, including extensive analysis of call logs.

51.     This phase also includes significant time spent meeting and conferring with third parties and Defendant regarding discovery requests, subpoenas and the associated documents sought by Class Counsel, including conferring with Defendant's counsel and Mojo's and Vulcan7's counsel regarding ongoing disputes and resolutions throughout the course of discovery; conferring with counsel and third parties regarding, preparing, and revising third party lead generation and dialing platform vendor declarations.

52.     This category also includes analyzing the need for experts and areas of expertise; selecting and retaining plaintiffs' experts; working with the experts to analyze the expansive electronic document production and reviewing Plaintiffs' experts' reports; analyzing Defendant's expert report; preparing for and defending one of Plaintiff's expert's depositions; and preparing for and taking Defendant's expert's deposition.

53.     Finally, this category also includes reviewing, analyzing and strategizing concerning trial preparation, including meeting with Defendant's counsel in person to discuss and prepare the Pretrial Statement (twice—once prior to the stay pending the *Barr* decision and once after); selecting trial exhibits; reviewing and analyzing Defendant's exhibit list; preparing deposition designations and counter-designations and analyzing Defendant's deposition designations and counter-designations.

| Timekeeper | Hourly Rate | Hours Worked | Lodestar |
|------------|-------------|--------------|----------|
| Avi R. Kaufman | $800 | 348.5 | $278,800 |
| Rachel E. Kaufman | $730 | 234.8 | $171,404 |
| | **Total** | 583.3 | $450,204 |

**Law and Motion Practice**

54.     During this phase of the litigation, Kaufman P.A. took the lead on researching and drafting all briefing in the Litigation and, as described above in ¶¶ 2-14, the motion practice was extensive and included multiple dispositive and functionally dispositive motions centering on complex and novel legal arguments. Kaufman P.A.'s work during this phase included, but was not limited to, analyzing Defendant's pleadings; analyzing, researching, and briefing responses to Defendant's various motions to stay and motion to strike class allegations; analyzing and briefing dispositive motions (twice), including meeting and conferring and preparing and revising stipulated agreed material facts, and Representative Plaintiff's motion for class certification (twice), including extensive research concerning vicarious liability; preparing Plaintiff's motion to strike amended initial disclosures; drafting, revising and analyzing pretrial submissions (twice), including verdict forms, jury instructions, and voir dire instructions, objections to exhibits and deposition designations; briefing Plaintiff's motion in limine and opposing Defendant's motion in limine; revising motion to approve the notice plan; analyzing and responding to Defendant's motion to stay or reopen discovery and motion to enforce the scheduling order or for protective order; researching, drafting and revising response to the partial motion to dismiss based on personal jurisdiction; researching, drafting and revising response to Defendant's Eleventh Circuit petition

to appeal this Court's class certification order; researching, preparing, and revising the motions for preliminary approval and for Class Counsel fees and expenses.

| Timekeeper | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Avi R. Kaufman | $800 | 567 | $453,600 |
| Rachel E. Kaufman | $730 | 436 | $318,280 |
| | Total | 1003 | $771,880 |

**Settlement**

55.     During this phase of the litigation, Kaufman P.A. was engaged in all aspects of settlement, including, but not limited to, engaging in negotiations with opposing counsel at various times over the course of the Litigation; drafting and revising mediation statements; preparing for and participating in two in-person mediations; negotiating with opposing counsel with the assistance of the mediator over the course of the months following mediation; participating in settlement calls with plaintiffs; and drafting and revising various iterations of the settlement agreement, amended settlement agreement, and associated documents.

| Timekeeper | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Avi R. Kaufman | $800 | 163 | $130,400 |
| Rachel E. Kaufman | $730 | 57 | $41,610 |
| | Total | 220 | $172,010 |

24

**Case and Settlement Management**

56.     During this phase of the litigation, Kaufman P.A. was engaged in all aspects of case and settlement management, including strategizing and coordinating tasks with co-counsel; requesting and evaluating bids for adversarial Class notice; preparing Class notice; requesting and evaluating bids for settlement administration; analyzing data necessary to administrate the Settlement; revising the claim form and notices; coordinating with and overseeing the settlement administrator regarding the implementation of the notice plan and claims process, including by reviewing and testing all aspects of the Settlement Website, reviewing claims, and addressing questions as they arose; and evaluating the notice program.

| Timekeeper | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Avi R. Kaufman | $800 | 107 | $85,600 |
| Rachel E. Kaufman | $730 | 48.6 | $35,478 |
| | **Total** | 155.6 | $121,078 |

**Reasonable Expenses**

57.     The costs incurred by Kaufman P.A. for which reimbursement is sought total $40,285.01, which were reasonable and necessary to the effective litigation of this case and are the types of expenses that would typically be billed to clients in non-contingency matters, and therefore should be approved. The Law Offices of Stefan Coleman incurred costs for which reimbursement is sought of $65,977.04.

Accordingly, in sum, Class Counsel incurred total costs for which reimbursement is sought of $106,262.05 in pursuing this action.[3] Class Counsel incurred these costs at the risk of receiving nothing in return. The costs reasonably expended in this action include the following:

| Expenses | Amount |
|---|---|
| Filing and Admission Fees | $1,306.00 |
| Courtesy Copies and Mailings | $399.19 |
| Process Servers | $1,580.30 |
| Experts | $20,600.00 |
| Travel | $10,290.61 |
| Deposition Fees | $6,108.91 |
| **Total** | $40,285.01 |

58.    The expenses incurred in this Litigation are reflected in the books and records of my firm. These books and records are prepared from receipts, check records, credit card statements, and other source materials, and are accurate records of the expenses incurred.

59.    Class Counsel spent over 2,800 hours and more than $175,000 to zealously promote the Class's interests. Class Counsel represented Plaintiff and the

---

[3] Counsel notes that this figure does not include the costs associated with adversarial notice, contacting Class Members concerning the Settlement or any additional notice as may be ordered by the Court. *See* ECF 214.

Class on a purely contingent basis. Class Counsel assumed the significant risk that they would not be compensated for time and out of pocket expenses invested into this contentious case. This risk of nonpayment incentivized counsel to work efficiently, to prevent duplication of effort, and to advance expenses responsibly.

60.     The time and resources devoted to this Litigation readily justify the requested fee. Moreover, Class Counsel assumed significant risk of nonpayment in initiating and expending attorney hours in this case given the complex legal issues involved and Defendant's vigorous defense of plaintiffs' and the Class's claims. Despite Class Counsel's effort in litigating this action, Class Counsel remain completely uncompensated for the time invested in the Litigation, in addition to the expenses we advanced.

61.     The Settlement provides an extremely fair and reasonable recovery for the Settlement Class given the combined litigation risks, including the strength of Defendant's defenses, the challenging and unpredictable path of litigation, Defendant's financial condition, and the changing TCPA law landscape.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: July 8, 2022               */s/ Avi R. Kaufman*
                                  Avi R. Kaufman

27