**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO. 6:18-CV-01851-PGB-EJK

| | |
|---|---|
| **BRUCE WRIGHT, JORGE VALDES, EDWIN DIAZ,** individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **CLASS ACTION** |
| v. | |
| **EXP REALTY, LLC,** | |
| Defendant. | |

**PLAINTIFF AND CLASS COUNSEL'S MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND INCORPORATED MEMORANDUM IN SUPPORT**

## I.  INTRODUCTION

Representative Plaintiff Edwin Diaz and Defendant eXp Realty, LLC reached a class action settlement agreement ("Settlement Agreement" or "Agreement")[1] resulting in $26,910,000 of monetary relief to the Class.

eXp has also agreed to change its business practices that resulted in this Litigation. Specifically, eXp has agreed to remove from its internal cloud-based platform for affiliated realtors training and instructional materials relating to cold call telemarketing, and to provide additional materials to its realtors concerning the requirements of the TCPA and other telemarketing laws and how to comply with them. To enact these changes in business practices, eXp has established an agent compliance committee that is responsible for generating the compliance materials and taking corrective action as to realtors who fail to comply with eXp's policies and federal and state laws restricting telemarketing. This meaningful remedial relief itself is valued at $17,081,672 to the Class and society over the next five years. See Economic Assessment of Remedial Relief in Class Action Settlement Agreement, prepared by Jon Haghayeghi, Ph.D., ECF 217-1, ("Haghayeghi Report").

The total economic value of the relief provided by the Settlement is therefore $43,991,672. This is an extraordinary result in a hard-fought case spanning multiple years and involving, among other things, a novel theory of realty brokerage vicarious

---

[1] Following the hearing on the motion for preliminary approval of the class action settlement, the Parties submitted an amended settlement agreement, which is the operative Settlement Agreement and can be found at ECF 211-1. All capitalized terms used herein have the same definitions as those defined in that Agreement.

1

liability developed by Class Counsel that has been rejected by multiple courts across the country, which, absent the Settlement, would have been further tested at summary judgment, trial, and on appeal.

For these, and the other reasons set forth in this memorandum and in the papers submitted in support of approval of the Settlement, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval to the Settlement, including find that the Notice Plan and notice documents meet all applicable requirements; (2) maintain the certification of the Class, the appointment of Representative Plaintiff as Class representative, and the appointment Avi R. Kaufman of Kaufman P.A. and Stefan Coleman of the Law Offices of Stefan Coleman, P.A., as Class Counsel; (3) approve the payment to the Settlement Administrator; and (4) enter Judgment dismissing the action with prejudice.[2]

## II. BACKGROUND

### a. The Case Was Hard-Fought and Heavily Litigated

This case involved more than two years of active litigation involving extensive motion practice, discovery, expert work, trial preparation, and settlement efforts. Declaration of Avi Kaufman, attached as Ex. 2.

On October 30, 2018, Plaintiff Bruce Wright filed the complaint against Defendant in this action asserting a claim under the TCPA's automatic telephone dialing system ("ATDS") provision (ECF 1). On January 24, 2019, Plaintiffs Wright, Jorge Valdes and Edwin Diaz filed the amended complaint which added

---

[2] A proposed order agreed to by Defendant is attached as Ex. 1.

claims under the TCPA's prerecorded voice calls and National Do Not Call registry provisions (ECF 30). On February 21, 2019, Defendant answered (ECF 40).

Since that time, the case has involved extensive motion practice and trial preparation.

On May 17, 2019, Defendant filed a motion to stay the case pending FCC guidance on what constitutes an ATDS under the TCPA (ECF 45) and a motion to strike Plaintiffs' class allegations (ECF 46), a revised version of which was filed on May 20, 2019 (ECF 48). On May 31, 2019, Plaintiffs filed their response to the motion to stay (ECF 49), and, on June 3, 2019, Plaintiffs filed their response to the motion to strike (ECF 50). On June 7, 2019, the Court denied Defendant's motion to stay the case (ECF 51). On June 13, 2019, the Court denied Defendant's motion to strike the class allegations (ECF 55).

On September 25, 2019, Defendant filed a summary judgment motion (ECF 59). On November 1, 2019, the Parties filed a stipulation of agreed facts (ECF 73), and Plaintiffs responded in opposition to the summary judgment motion (ECF 74).

On October 25, 2019, Plaintiff Diaz moved for class certification (ECF 68). On November 22, 2019, Defendant filed its response to the motion (ECF 87), and on December 13, 2019, Plaintiff filed a reply supporting class certification (ECF 91).

In the midst of trial preparations, on January 22, 2020, Defendant filed a motion to stay pending the Supreme Court's decision in *Barr v. AAPC* regarding the constitutionality of the TCPA (ECF 94). On February 3, 2020, the Parties filed their joint pretrial statement (ECF 96). On February 5, 2020, Plaintiffs responded to the

motion to stay (ECF 97).  On February 7, 2020, the Court granted the stay pending
the *Barr* decision, and after *Barr* was decided, following additional briefing, on
August 12, 2020, the Court continued the stay pending the Supreme Court's decision
in *Facebook Inc. v. Duguid* regarding what constitutes an ATDS (ECF 108).

On April 15, 2021, after the Supreme Court's *Facebook* ruling, the stay was
lifted and an amended case management schedule was entered (ECF 118 & 119).
On May 13, 2021, Plaintiff Diaz filed a renewed motion for class certification (ECF
125), and Defendant filed a renewed summary judgment motion (ECF 123). The
renewed motions were fully briefed as of June 23, 2021 (ECF 127, 131, 137, & 138).

Thereafter, the Parties again turned their focus to trial preparation. On August
18, 2021, Plaintiffs moved to strike Defendant's amended initial disclosures (ECF
160), and on September 1, 2021, Defendant filed its response to the motion to strike
(ECF 169). On August 24, 2021, the Parties filed a renewed joint pretrial statement
(ECF 161). On August 31, 2021, the Parties filed motions in limine (ECF 165 &
166). The motions in limine were both fully briefed as of September 14, 2021 (ECF
172 & 173). The Parties also filed their objections to each other's deposition
designations and counter designations (ECF 170 &171).

On September 29, 2021, the Court granted class certification and directed the
Parties to submit proposed notices (Sealed ECF 174). On October 12, 2021, in
conjunction with preparing notices and a notice plan, Plaintiffs filed a motion to
overrule Defendant's objection to the production of certain call records (ECF 176).
While the motion was denied, the Parties and third parties relevant to the objection

further met and conferred regarding the call records necessary to implement notice. On October 15, 2021, the Parties submitted joint class notice forms (ECF 178) and Plaintiffs filed a motion to approve the notice plan (ECF 179).

Also on October 15, 2021, Defendant filed a motion to stay or reopen discovery (ECF 181) and a motion to enforce the scheduling order or for protective order (ECF 183). On October 19, 2021, third party Mojo filed a motion for clarification (ECF 189) and Plaintiffs responded to Defendant's motion to enforce the scheduling order or for protective order (ECF 190). On October 21, 2021, the Court denied Defendant's motion to stay or reopen discovery, denied the motion to enforce the scheduling order, granted the motion for protective order, and provided clarity to Mojo (ECF 191, 192, & 193).

On October 26, 2021, Defendant filed a partial motion to dismiss based on personal jurisdiction as to non-Florida Class Members (ECF 194). On November 17, 2021, Plaintiffs responded to the motion (ECF 198).

Motion practice in this case extended to the Eleventh Circuit of Appeals. On October 13, 2021, Defendant petitioned the Eleventh Circuit for permission to appeal this Court's class certification order. *eXp Realty, LLC v. Wright*, No. 21-90027-G, ECF 1 (11th Cir. 2021). On October 25, 2021, Plaintiff submitted his opposition to Defendant's petition. *See id*.

Like motion practice in this case, discovery was fulsome, involving multiple waves of written discovery between the Parties, multiple waves of third party subpoenas, expert discovery relating to multiple expert reports relating to multiple

different disciplines, and five depositions. Plaintiffs subpoenaed Plaintiff Diaz's telephone carrier, six eXp realtors, and six vendors associated with lead generation and dialing systems. The written discovery and subpoenas resulted in the production of tens of thousands of pages of electronic documents relating to Defendant's realtors' calling practices. Kaufman Decl. ¶ 11.

And just as the Parties invested in motion practice, discovery, and trial preparation, they also expended significant effort trying to resolve the case.

On November 22, 2019, the Parties attended a full day mediation with Hon. James F. Holderman (Ret.) at JAMS in Chicago.

On November 15, 2021, the Parties engaged in a second full-day, in person mediation, this time with Hunter Hughes in Atlanta. *Id*. at ¶ 13. The Parties engaged in further negotiations over the course of the following days with Mr. Hughes' assistance, reaching an agreement as to the outline of a class wide resolution (*see* ECF 199). *Id*. The Parties then engaged in months of additional, adversarial negotiations culminating in the Settlement Agreement. *Id*.

And since that time, Class Counsel have continued to act diligently on behalf of the Class in implementing the Notice Plan and otherwise advocating for the interests of the Class (*see* ECF 214 & 222).

**b. The Case Involves Significant Ongoing Risk Due to the Class's Novel Theory of Realty Brokerage Vicarious Liability and the Ever-Changing TCPA and Consumer Law Landscape**

Notwithstanding the Court's adversarial certification of the Class, this case involves significant ongoing risk at summary judgment, trial, and on appeal due to

(1) the Class's novel liability theory and (2) changes in TCPA and consumer class action law that materialized and would continue to materialize during its pendency. In fact, eXp's summary judgment motion, motion to dismiss out of state Class members' claims, and Rule 23(f) petitions addressing the vicarious liability theory and advocating, in effect, for a change in the law to preclude nationwide class actions in the absence of general jurisdiction remain pending.

At the time this case was filed, no court had certified a class on a similar theory of realty brokerage vicarious liability or found the theory otherwise viable in any legal context. Indeed, Class Counsel are at the forefront of this novel theory and are not aware of a single such case being filed in any court before Class Counsel began pursuing it. *See, e.g.*, *Wright v. Keller Williams Realty, Inc.*, No. 2:18-cv-635 (W.D. Wash.) (filed May 2, 2018); *Wright v. La Rosa Realty, LLC*, No. 6:18-cv-734 (M.D. Fla.) (filed May 11, 2018); *Gonzalez v. Related ISG Realty, LLC*, No. 1:18-cv-23238 (S.D. Fla.) (filed Aug. 9, 2018); *Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411 (D.N.J.) (filed Feb. 11, 2019); *St John v. Keller Williams Realty*, No. 6:19-cv-1347-Orl-40DCI (M.D. Fla.) (filed July 22, 2019); *Declements v. My Home Group Real Estate LLC*, No. 2:20-cv-362 (D. Ariz.) (filed Feb. 19, 2020).

Since then, district courts across the country have repeatedly disagreed about the viability of Class Counsel's vicarious liability theory. *Compare Valdes v. Century 21 Real Estate, LLC*, 2019 U.S. Dist. LEXIS 182616 (D.N.J. Oct. 21, 2019) (denying brokerage's motion to dismiss); *Hayhurst v. Keller Williams Realty, Inc.*, 2020 U.S. Dist. LEXIS 128877 (M.D.N.C. July 22, 2020) (same); *St John v. Keller*

7

*Williams Realty*, 2020 U.S. Dist. LEXIS 257506 (M.D. Fla. Feb. 4, 2020) (Byron, J.) (same); *Bumpus v. Realogy Brokerage Grp. LLC*, 2022 U.S. Dist. LEXIS 52650 (N.D. Cal. Mar. 23, 2022) (granting class certification); *with Rahimian v. Adriano*, 2022 U.S. Dist. LEXIS 46437 (D. Nev. Mar. 16, 2022) (granting brokerage's motion to dismiss); *Dave v. Century 21 Real Estate, LLC*, 2021 U.S. Dist. LEXIS 225282 (D.S.C. Sep. 15, 2021) (same); *Valdes v. Nationwide Real Estate Execs.*, 2021 U.S. Dist. LEXIS 100931 (C.D. Cal. Apr. 22, 2021) (same); *Macdonald v. Keller Williams Realty, Inc.*, (D. Ariz. Jan. 28, 2021) (same); *DeClements v. RE/MAX LLC*, 2020 U.S. Dist. LEXIS 253299 (D. Colo. Oct. 13, 2020) (same); *Declements v. Americana Holdings LLC*, 2020 U.S. Dist. LEXIS 130213 (D. Ariz. July 23, 2020) (granting brokerage owner/operator's motion to dismiss).

In fact, just a few months before class certification was initially briefed in this case, a district court issued a first of its kind decision rejecting the same vicarious liability theory and denying class certification against a national brokerage in a case that was filed the same month as this one. *Chinitz v. NRT W., Inc.*, 2019 U.S. Dist. LEXIS 148699 (N.D. Cal. Aug. 30, 2019).

Therefore, notwithstanding this Court's certification of the Class, there is significant ongoing risk involved in continuing to pursue the Class's novel vicarious liability theory. And that risk is imminent, given the pendency of eXp's summary judgment motion and Rule 23(f) petition, and would continue through trial and appeal even if eXp's motion and petition are denied.

Relatedly, there is considerable ongoing risk that the ever-changing TCPA

and consumer law landscape could ultimately undermine the Class's claims in part or in whole – just as it in fact did during the case.

Just a few months before this case started, in March 2018, the D.C. Circuit held that the FCC's long-standing, consumer-friendly interpretation of what constituted an automatic telephone dialing system under the TCPA was no longer valid. *See, e.g.,* ECF 45. Consistent with that, after Plaintiffs had engaged an expert relating to whether the dialers eXp's realtors used constituted automatic telephone dialing systems and briefed class certification (including as to a claim under the automatic telephone dialing provision, which was the Plaintiffs' most straightforward claim with the largest potential class), the Eleventh Circuit interpreted the term in the most limited possible manner, *see, e.g.,* ECF 95, and that interpretation was upheld by the Supreme Court in *Facebook* requiring Plaintiffs to abandon their automatic telephone dialing system claim and proposed class.

Similarly, during this case, the Supreme Court and Eleventh Circuit have issued opinions relating to class action standing and TCPA standing, respectively, heightening the requirements for demonstrating standing in class actions generally and TCPA cases specifically. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) (requiring each class member to have standing); *Grigorian v. FCA US Ltd. Liab. Co.*, 838 F. App'x 390 (11th Cir. 2020) (in a non-binding opinion, *see* 11th Cir. R. 36-2, holding that the receipt of a ringless voicemail does not confer standing); *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) (holding that the receipt of a text message does not confer standing); *see also Barnes v. Allsup Emp't Servs., LLC,*

9

2022 U.S. Dist. LEXIS 117003 (S.D. Fla. July 1, 2022) (denying class certification in a prerecorded voice calls case based on standing); *Audish v. Nat'l Health Connect LLC*, 2022 U.S. Dist. LEXIS 114107 (S.D. Fla. June 28, 2022) (finding that the receipt of a single prerecorded call resulting in a voicemail does not confer standing).

And these unfavorable changes to the law relating to the determination of what constitutes an automatic telephone dialing system and standing were not even the most severe threats to the viability of Plaintiffs' claims posed by a potential change in the law prior to settlement of this case. Instead, a potential ruling by the Supreme Court in *Barr* that the TCPA was unconstitutional and irreparable was because it would have defeated all of Plaintiffs' claims after class certification and summary judgment had been briefed and trial preparation had commenced in earnest (the first time). *Compare Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 506 F. Supp. 3d 1242 (M.D. Fla. 2020) (Moody, J.) (dismissing TCPA claims for lack of subject matter jurisdiction and finding that the TCPA was unconstitutional and unenforceable for calls made between November 2015 and July 2020) *with Boisvert v. Carnival Corp.*, 2021 U.S. Dist. LEXIS 47397, at *7 (M.D. Fla. Mar. 12, 2021) (Moody, J.) (denying substantively identical motion).

And while the risks from those changes in TCPA and consumer class action law have already been borne, absent the Settlement, the sheer volume of actual and potential changes to the law are proof that going forward the Class faces the ongoing risk of changes in the law based on further legislation, agency action, and court rulings. In fact, eXp's motion to dismiss out of state Class Members' claims based

10

on a novel application of the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Court* is still pending (*see* ECF 194).

There is therefore significant ongoing risk in going forward with the Class's claims based on the novel brokerage vicarious liability theory in the case and the likelihood of further unfavorable changes in TCPA and consumer class action law.

### c. The Settlement Provides Meaningful and Immediate Monetary and Remedial Relief to the Class and Society

The Settlement provides monetary relief of $90 per claim net of any award of attorneys' fees and expenses. If the Court grants Class Counsel's requested fees and expenses, each Claimant will receive approximately $60.

The Settlement also provides valuable remedial relief consisting of changes to eXp's business practices that resulted in this Litigation. Specifically, eXp has agreed to remove from its internal cloud-based platform for affiliated realtors training and instructional materials relating to cold call telemarketing, and to provide additional materials to its realtors concerning the requirements of the TCPA and other telemarketing laws and how to comply with them. To enact these changes in business practices, eXp has established an agent compliance committee that is responsible for generating the compliance materials and taking corrective action as to realtors who fail to comply with eXp's policies and federal and state laws restricting telemarketing. Kaufman Decl. ¶ 27.

To assign a dollar value to the Settlement's remedial relief, an economist, Dr. Haghayeghi, was engaged to perform an economic assessment. As part of that

11

assessment, Dr. Haghayegi determined the anticipated effect of eXp's business practice changes on realtor telemarketing conduct and the corresponding consumer willingness to pay for such changes, concluding that over the next five years the remedial relief has a mean present discounted value of $17,081,672. Haghayeghi Report at 10-11. Similar consumer willingness to pay analyses have been accepted by courts for valuing remedial relief in TCPA class settlements. *See Beiswinger v. West Shore Home LLC*, Case No. 3:20-cv-01286-HES-PDB, ECF 36 (M.D. Fla. May 26, 2022) (Schlesinger, J.) (granting final approval to TCPA class settlement aided by Dr. Haghayeghi's valuation of the remedial relief); *De Los Santos v. Milward Brown, Inc.*, Case No. 9:13-cv-80670, ECF 82-3 and 84 (S.D. Fla., Sep. 11, 2015) (granting final approval to TCPA class settlement aided by Dr. Haghayeghi's late colleague Dr. J. Herbert Burkman's valuation of the remedial relief).

The total economic value of the Settlement's relief is therefore $43,991,672 to the Class and society. Ultimately, the Settlement confers substantial and immediate benefits upon the Class and others whereas continued and protracted litigation may have ultimately delivered none given the risks presented by Plaintiffs' novel vicarious liability theory, the ever changing TCPA and consumer class action law landscape, and the uncertainties of contested litigation, including at summary judgment, trial and on appeal. *See* Kaufman Decl. ¶ 28.

## III.    IMPLEMENTATION OF THE PROPOSED SETTLEMENT

The Court entered the Preliminary Approval Order on April 8, 2022. ECF 212. Both before and after that date, the Parties have worked diligently with the

12

Settlement Administrator to effectuate the terms of the Settlement Agreement. Declaration of Gio Santiago, Settlement Administrator, attached as Ex. 3. And, while the Parties disagree about whether the Class should be provided additional opportunities to make claims, the Parties agree that notice was sufficiently provided to the Class (ECF 214, 218, and 222).

Specifically, on March 14, 2022, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), the Settlement Administrator sent the CAFA Notice to the United States Attorney General and all State Attorneys General. Settlement Administrator Decl. at ¶ 2.

On April 21, 2022, KCC received from plaintiff counsel a list of records containing phone numbers and name and address information. KCC compared the list against a list of phone numbers associated with the Class, formatted it for mailing purposes, removed duplicates, processed the names and addresses through the National Change of Address Database to update any addresses on file with the United States Postal Service and identified 236,592 unique records. *Id*. at ¶ 3.

On May 6, 2022, KCC published a website dedicated to this matter to provide information and the key documents relating to the case and Settlement (including Spanish translations of notice documents) to the Class Members and to answer frequently asked questions and established the toll-free Settlement information hotline. *Id*. at ¶¶ 8, 9. Since that time, the website has had more than 10,000 visits, and the toll-free hotline has received 231 calls. *Id*.

On May 6, 2022, KCC initiated the email and mail notice program. *Id*. at ¶¶

13

4, 5. The Summary Notice was successfully delivered to more than 90% of Class Members, and the overall reach of these direct notice efforts was enhanced by the dissemination of the Summary Notice by email. *Id*. at ¶ 7.

In response to these robust notice efforts (and Class Counsel's additional efforts to advise the Class of their options, *see, e.g.,* ECF 214 & 222), 8,887 valid claims have been submitted, only 2 Settlement Class Members have opted out, and no Settlement Class Members or CAFA Notice recipients have objected to the Settlement. *Id*. at ¶¶ 10-12; Kaufman Decl. ¶ 29. The deadline for Class Members to file claims in this matter was July 7, 2022.

Under the Settlement Agreement, the Settlement Administrator shall be paid exclusively from the Settlement Sum and all sums advanced by Defendant toward Settlement Administration Expenses before the Funding Date, if any, shall be deducted from the Settlement Sum. KCC estimates its total Settlement Administration Expenses to be $250,093.63 through completion of this matter. *Id*. at ¶ 13. Those costs are reasonable in light of the costs for, among other things, emailed and mailed notice, claim verification, and distribution of settlement funds for a Class with hundreds of thousands of members. Kaufman Decl. ¶ 30.

## IV.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of

14

settlement." *In re Chicken Antit. Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

### 1.   Notice was the Best Practicable and was Reasonably Calculated to Inform the Class of its Rights

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Lit. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit. § 21.312 (listing relevant information).

The Notice Plan satisfies these criteria. As recited in the Settlement Agreement and above, the Notice Plan informed Class Members of the substantive terms of the Settlement. It also advised Class Members of their options for remaining part of the Class, for objecting to the Settlement, Class Counsel's attorneys' fee application, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Plan was designed to directly reach a high percentage of Class

Members. Specifically, the direct mailed and emailed notice reached more than 90% of the members of the Class, and the reach was further enhanced by the Settlement website, and the Settlement hotline. Settlement Administrator Decl. at ¶ 9. This exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Plan and the form and content of the notice documents.

### 2.    The Settlement Should Be Approved as Fair, Reasonable, and Adequate

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956, at *16 (M.D. Fla. June 22, 2020) (Byron, J.) ("this Circuit expresses a strong preference towards settlement of class litigation").

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of the plaintiffs' success on the merits;

(5) the range of possible recovery; and

(6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *Cook*, 2020 U.S. Dist. LEXIS 111956, at *16-17 (noting continued relevance of these factors after Rule 23(e)'s amendment). Analysis of these factors shows the Settlement is eminently fair, reasonable, and adequate.

16

### i.    There Was No Fraud or Collusion

The fact that "settlement was achieved only after extensive and lengthy negotiations with assistance of an experienced and well-respected mediator," and was in fact the mediator Mr. Hughes's proposal, "establishes the arm's length nature of the negotiations and is strong evidence of lack of collusion." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *17; *Moyle v. Liberty Mut. Ret. Ben. Plan*, 2018 U.S. Dist. LEXIS 34730, at *20-21 (S.D. Cal. Mar. 2, 2018) (approving settlement in which the parties mediated with Mr. Hughes because he "has served as a neutral in scores of national class, collective, and mass actions" and "guided the parties through two separate days of in-person negotiations in Atlanta and Los Angeles, respectively, and worked to continue to facilitate communication between the parties for several months until the parties eventually accepted his proposal"); Kaufman Decl. ¶ 13.

The "extensive and contested nature of the litigation" (including before and after settlement, *see, e.g.,* ECF 222) also "demonstrate a lack of collusion." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *17-18; Kaufman Decl. ¶¶ 2-14.

### ii.    The Settlement Will Avert Continued
### Complex Expensive Litigation

The Class's claims are complex and have been extensively litigated to date. Kaufman Decl. ¶¶ 2-19. eXp has made clear that it would not have settled the case using any other structure and would have instead awaited a ruling on its appellate petition, and if unsuccessful, tried the case, and, if again unsuccessful, filed a post-trial appeal. Kaufman Decl. ¶ 13. Recovery by any means other than this Settlement,

if at all, would therefore require additional years of litigation, including trial and appellate practice. This factor therefore supports approving the Settlement. *See, e.g., Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) ("demand for time on the existing judicial system must be evaluated in determining … reasonableness").

### iii.   The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment

The Eleventh Circuit's "stage of the proceedings" requirement is "meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18. Where a settlement "occurred only after numerous contested issues of class certification, discovery, and summary judgment were extensively briefed and litigated" and "the Class Representatives evaluated voluminous discovery and data and conducted numerous depositions, such that they possessed sufficient information and knowledge with which to evaluate the merits and benefits of settlement compared to the risk of further litigation" this "factor favor[s] final approval." *Id*. at *18-19. And that is the circumstance here.

Class Counsel negotiated the Settlement with the benefit of more than two years of active and contentious litigation, including extensive motion practice, written discovery, document review, depositions, expert work, and trial preparation. Kaufman Decl. ¶¶ 2-13. As such, Class Counsel's were in an appropriate position to evaluate the strengths and weaknesses of the Class's claims and Defendant's defenses, as well as the range of potential recoveries if the action proceeded. *Id*. The stage of the proceedings

factor therefore supports approval of the Settlement.

### iv. Plaintiff and the Class Still Face Significant Obstacles to Prevailing

Notwithstanding the Court's adversarial certification of the Class, the Class faces significant ongoing risk absent the Settlement. As explained in detail above, these risks include an adverse ruling on the Class's novel theory of brokerage liability at summary judgment, trial, and appeal. Kaufman Decl. ¶¶ 15-19. Because "there is no direct guidance … on the [agency] questions … presented by this case—and "other courts can and have disagreed" about the liability theory, *see id.*—"the risk of no recovery because of adverse ruling on appeal," or earlier on summary judgment or at trial, "is real and significant." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *21-22 (finding risk of no recovery as a result of the class's novel liability theory supported settlement approval even after granting class certification and summary judgment in favor of the class) *see Haynes v. Shoney's*, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise."). And the risk associated with this novel liability theory is compounded by the risk of further unfavorable changes to TCPA and consumer class action law as the case proceeds, including as a result of Defendant's pending motion to dismiss non-Florida Class Members' claims. Kaufman Decl. ¶¶ 20-25.

The significant ongoing risk to the Class's claims absent the Settlement therefore supports approval of the Settlement.

v.    **The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate**

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.*; *see Cook*, 2020 U.S. Dist. LEXIS 111956, at *21 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 987 n.9 (11th Cir. 1984), in which the court "approved [a] settlement providing 5.6% of the potential recoverable damages").

Here, the Class's maximum recovery at trial was $500 per violation, and the Settlement provides $90 per violation. Kaufman Decl. ¶ 26. The Settlement's monetary relief is therefore 18% of the Class's maximum monetary recovery, if any, after trial and appeals. *Id.* In addition, the Settlement provides injunctive relief valued at $17,081,672 to the Class and society over the next five years. Haghayeghi Report at 10-11.

Given the significant litigation risks the Class faced, the Settlement represents an extremely successful result. The monetary relief alone is significant and exceeds the range of similar settlements. The net amount attributed to each violation that each Claimant is expected to receive is approximately $60. This amount exceeds the per claim payouts in the vast majority of TCPA class action settlements, including in

20

cases involving allegations of vicarious liability and/or involving direct liability against large companies like eXp. *See, e.g., In re Monitronics Int'l*, No. 1:13-MD-2493, ECF 1214 (N.D.W. Va. June 12, 2018) (in a vicarious liability case with a certified adversarial class, like here, granting final approval to $28 million TCPA settlement estimated to result in a payout of $38 per claim); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (in a direct liability case, granting final approval with a $39.66 payout per claim); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (direct liability; $20-$40 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (direct liability; $30 per claimant); *Steinfeld v. Discover Fin. Servs.*, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10,  2014) (direct liability; $46.98 per claimant); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga.  Jan. 30, 2017) (direct liability; $24 per claimant; deemed an "excellent result"); *Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV, ECF 86 (S.D. Fla. Jan. 16, 2020) (direct liability; $10 voucher and $5 in cash, less attorneys' fees, costs, notice and administration costs, and service award, per claimant); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722, ECF 44 (S.D. Fla. Nov. 1, 2019) (direct liability; $9, less attorneys' fees, costs, administration costs, and service award, per claimant); *Cabiness v. Educ. Fin. Sols., LLC*, 2019 U.S. Dist. LEXIS 50817, at *12 (N.D. Cal. Mar. 26, 2019) (direct liability; $33.36 per claimant). *See also Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (in claims-made settlements, the total value of the benefits made available by the settlement, and not the structure or

21

claims rate, dictate the determination of "fairness, reasonableness, or adequacy").

The monetary relief provided by the Settlement therefore supports its final approval. "This conclusion is buttressed by the fact that Defendant[] agreed to change their business practice … moving forward." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *21. And this conclusion is not undermined by the Settlement's structure, terms for awarding attorneys' fees, or relative treatment of Class Members.

Although the Settlement has a claims-made structure, the claims process was "simple, streamlined, and straightforward" as demonstrated by the notices and Claim Form approved by the Court and made available to Class Members in English and Spanish. *Cook*, 2020 U.S. Dist. LEXIS 111956, at *22-23. Claim Forms were pre-populated with Class Members' contact information and to make a claim, Class Members were not required to "submit any additional evidence or documentation"; they were required only to identify their cellular telephone number during the Class Period and sign an attestation. *Id*.; Settlement Administrator Decl. at Ex. B.

Although the claims rate is below 4%, and Class Counsel seek to provide Class Members additional opportunities to make claims (in addition to the Court approved Notice Plan and Class Counsel's outreach campaign), "[t]he question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Braynen v. Nationstar Mortg., LLC*, 2015 U.S. Dist. LEXIS 151744, at *48-50 (S.D. Fla. Nov. 9, 2015) ("Courts in this Circuit have approved claims-made class settlements where the claims rate was low, including

22

approving single-digit claims rates. . . . In addition, courts often grant final approval of

class action settlements before the final claims deadline. . . . The question for the Court

at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair,

reasonable, and adequate,' not whether the class decides to actually take advantage of

the opportunity provided.") (internal citations omitted); *see Poertner v. Gillette Co.*, 618

F. App'x 624, 626 (11th Cir. 2015) (approving settlement class when less than 1% of

class members filed claims); *Cook*, 2020 U.S. Dist. LEXIS 111956, at *13-14

(collecting cases approving claims made settlements with claims rates below 4%).

The determination that the claims-made structure does "not undermine the

fairness or adequacy" of the Settlement is "further supported by the fact that

Defendant… would not have settled the case on a direct pay model, and would have

appealed this matter to the Eleventh Circuit." *Compare Cook*, 2020 U.S. Dist. LEXIS

111956, at *23-24 *with* Kaufman Decl. ¶ 13.

Similarly, the terms of the proposed fee award do not undermine the Settlement's

fairness or adequacy. To the contrary, the Settlement is "not conditioned on an award of

attorneys' fees" and Defendant reserved and exercised its right to challenge Class

Counsel's requested fee award (*see* ECF 218). *Cook*, 2020 U.S. Dist. LEXIS 111956,

at *24-25; Kaufman Decl. ¶ 31; *cf. Poertner*, 618 F. App'x at 630 n.6 (11th Cir.

2015) (holding that "clear-sailing clauses," pursuant to which a defendant agrees not

to challenge class counsel's requested attorneys' fees, "could allow a defendant to

pay class counsel excessive fees and costs in exchange for counsel accepting an

unfair settlement on behalf of the class"); *see also supra* at 20-22 (collecting TCPA

23

cases approving settlements involving claims payouts net of attorneys' fees).

Finally, the Settlement treats Class members equitably. "Under the Settlement Agreement, Settlement Class Members are treated identically insofar as it relates to Notice, Claim Forms, damages, and all other material ways. Additionally, the scope of the release is identical as to all Class Members," and it is narrowly tailored to the types of claims at issue in the case. *Cook*, 2020 U.S. Dist. LEXIS 111956, at *25; Kaufman Decl. ¶ 32.

The Settlement's benefits, structure, terms for awarding Class Counsel's attorneys' fees, and treatment of Class Members relative to each other is fair, reasonable, and adequate.

>           **vi.    The Opinions of Class Counsel, the Plaintiff, CAFA
>                    Notice Recipients, and Absent Settlement Class
>                    Members Favor Approval**

Class Counsel and the Plaintiff strongly endorse the Settlement given the significant ongoing risk associated with going forward with the Class's claims. Kaufman Decl. ¶ 33. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *Cook*, 2020 U.S. Dist. LEXIS 111956, at *25 ("Class Counsel are experienced and well-regarded class action litigators, and this Court is inclined to give weight to their opinions.").

Moreover, to date, there have been no objections from Class Members or CAFA Notice recipients, and only 2 opt outs from the Settlement. Settlement Administrator Decl. ¶ 13. "This lack of opposition to the Settlement Agreement is

24

significant evidence that the settlement terms are fair, adequate, and reasonable." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *15, 25-26.

### 3.     The Court Should Certify the Settlement Class

This Court previously certified the Class under Rule 23 (ECF 174, 175) and ordered that the Class remain certified for purposes of the Settlement (ECF 212). For all the reasons set forth in Plaintiff's preliminary approval briefing (ECF 208), incorporated by reference herein, and the Preliminary Approval Order, the Court should finally certify the Class as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Cook*, 2020 U.S. Dist. LEXIS 111956, at *9 ("[I]f 'the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.'").

Based on the foregoing, the Settlement is fair, reasonable, and adequate.

## V.     CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement, including finding find that the Notice Plan and notice documents meet all applicable requirements; (2) maintain the certification of the Class, appointment of Representative Plaintiff as Class representative, and appointment Avi R. Kaufman of Kaufman P.A. and Stefan Coleman of the Law Offices of Stefan Coleman, P.A., as Class Counsel; (3) approve payment to the Settlement Administrator; and (4) enter Judgment.

## Local Rule 3.01(g) Certification

I certify that counsel for Plaintiff met and conferred with counsel for
Defendant and Defendant does not oppose the request for final approval of the
settlement.

DATED July 28, 2022                     Respectfully submitted,

                                        */s/ Avi R. Kaufman*
                                        Avi R. Kaufman
                                        Florida State Bar # 84382
                                        kaufman@kaufmanpa.com
                                        Rachel E. Kaufman
                                        Florida State Bar # 87406
                                        rachel@kaufmanpa.com
                                        KAUFMAN P.A.
                                        237 South Dixie Highway, 4th Floor
                                        Coral Gables, FL 33133
                                        Telephone: (305) 469-5881

                                        Stefan Coleman
                                        Florida State Bar # 30188
                                        law@stefancoleman.com
                                        LAW OFFICES OF STEFAN COLEMAN, P.A.
                                        201 S. Biscayne Blvd, 28th Floor
                                        Miami, FL 33131
                                        Telephone: (877) 333-9427
                                        Facsimile: (888) 498-8946

                                        *Class Counsel*

26

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 28, 2022, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, and it is being

served this day on all counsel of record via transmission of Notice of Electronic

Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*
